1   Douglas R. Pahl, OSB No. 950476
    DPahl@perkinscoie.com
2   PERKINS COIE LLP
    1120 NW Couch Street, 10th Floor
3   Portland, Oregon 97209
    Telephone: 503-727-2000
4   Facsimile: 504 346-2222

5   Attorneys for Debtor
    Ivory Trading Company, Inc.

6

7

8

9              UNITED STATES BANKRUPTCY COURT

10               FOR THE DISTRICT OF OREGON

11

12  In re                              | Case No. 15-32026-pcm11

13  Ivory Trading Company, Inc.        | **SECOND AMENDED DISCLOSURE
                                       | STATEMENT FOR DEBTOR'S
14              Debtor.                | CHAPTER 11 FIRST AMENDED PLAN
                                       | OF REORGANIZATION**
15                                     | **(Dated July 16, 2015)**

16        **This Disclosure Statement Has Only Been Conditionally Approved by the
          Bankruptcy Court.  It Has Not Been Finally Approved by the Bankruptcy Court as
17        Containing Adequate Information. At the Hearing on Plan Confirmation, the
          Bankruptcy Court will Determine Whether this Disclosure Statement Contains
18        Adequate Information**

19

20

21

22

23

24

25

26

PAGE  1-   SECOND AMENDED DISCLOSURE
           STATEMENT

117387-0001/LEGAL125928975.4

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Ivory Trading Company, Inc. dba Ivory Headwear, Co. ("Debtor") submits this Disclosure Statement in connection with its Plan of Reorganization dated July 16, 2015 (the "Plan").  A copy of the Plan is attached hereto as Exhibit A.  Capitalized terms used herein shall have the meanings given to them in the Plan unless otherwise defined herein.  The purpose of this Disclosure Statement is to set forth information that (i) summarizes the Plan and alternatives to the Plan, (ii) informs creditors and Equity Interest holders of the treatment to be afforded their claims against and equity interests in the Debtor under the Plan, (iii) assists creditors entitled to vote in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.  The Plan describes how all Claims against and Equity Interests in the Debtor will be resolved, and provides the means by which the Debtor will be reorganized.

## I.    EXECUTIVE SUMMARY

### A.    Introduction.

On April 24, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  Since then, the Debtor has managed its properties and affairs as a debtor-in-possession.  This Disclosure Statement describes certain aspects of the Plan, the Debtor's business operations, significant events that occurred in the Bankruptcy Case, and related matters.  This executive summary is intended solely as a summary of the distribution provisions of the Plan and certain matters relating to the plan confirmation process.  For a more complete understanding of the Plan, you should read this Disclosure Statement, the Plan, and the exhibits thereto in their entirety.

### B.    Definitions and Plan Supremacy.

All terms defined in the Plan will have the same meanings when used in this Disclosure Statement.  Terms defined in this Disclosure Statement which are also defined in the Plan are solely for convenience and the Debtor does not intend to change the definitions of those terms in

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the Plan. Furthermore, in the event of any inconsistency between the Plan and this Disclosure Statement, the Plan will control. The exhibits attached to this Disclosure Statement are incorporated into and are a part of this Disclosure Statement.

**C.    Plan Materials.**

The Debtor is mailing the following items to those creditors entitled to vote and certain other parties:

1.    A copy of the "Order Conditionally Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejection of Plan; and Notice of Confirmation Hearing as entered by the Bankruptcy Court on _____ 2015 (the "<u>Disclosure Statement Order</u>");

2.    This Disclosure Statement as approved by the Court;

3.    The Plan;

4.    A ballot; and

5.    A pre-addressed return envelope.

Pursuant to the terms of the Plan, certain Classes of Claims and Equity Interests are entitled to vote. Enclosed with this Disclosure Statement are a ballot and a pre-addressed envelope for return of the ballot. The voting procedures are set forth more fully in Article VIII of this Disclosure Statement. If you did not receive a ballot or if your ballot is lost or damaged, please contact Ann Sandvig at Perkins Coie LLP, 1120 N.W. Couch Street, 10th Floor, Portland, OR 97209, by telephone at (503) 727-2046, by fax at (503) 727-2222, or by email at asandvig@perkinscoie.com. The Debtor believes that confirmation of the Plan is in the best interests of the Debtor and its creditors, and that creditors should vote to approve the Plan. You may vote on the Plan by returning the enclosed ballot to the address shown below prior to the Voting Deadline, which is **5:00 p.m. local time in Portland, Oregon on _____, 2015. Only Ballots received by the Voting Deadline can be counted for purposes of Plan confirmation.**

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

1 **D. The Disclosure Statement Approval**

2     On July___, 2015, the Bankruptcy Court conditionally approved this Disclosure

3 Statement in accordance with section 1125(f) of the Bankruptcy Code and Bankruptcy Rule 3017

4 as containing "adequate information" to enable a hypothetical, reasonable investor typical of

5 holders of Claims against the Debtor to make an informed judgment as to whether to accept or

6 reject the Plan at the Confirmation Hearing. Approval of this Disclosure Statement does not

7 constitute a final determination by the Bankruptcy Court as to the adequacy of the information

8 provided in the Disclosure Statement or a determination as to the fairness or merits of the Plan.

9 **E. Confirmation of Plan**

10     The Bankruptcy Court may confirm the Plan if it is approved by creditors holding more

11 than two-thirds in amount and one-half in number of the Claims voted in each impaired Class of

12 Claims under the Plan.

13     **Objections, if any, to confirmation of the Plan must be filed with the Bankruptcy**

14 **Court and a copy served on counsel to the Debtor such that the objection is received on or**

15 **before 5:00 p.m. on August 19, 2015. The hearing to consider confirmation of the Plan will**

16 **be held at 9:30 a.m. on August 26, 2015.**

17     The confirmation hearing may be adjourned from time to time without further notice

18 except for the announcement of the adjourned date and time at the hearing on confirmation, or at

19 any adjournment thereof.

20         **II. DISCLAIMERS**

21     **This Disclosure Statement is not the Plan. This Disclosure Statement, together with**

22 **the Plan which accompanies this Disclosure Statement, should be read completely. For the**

23 **convenience of creditors, the Plan is summarized in this Disclosure Statement, but all**

24 **summaries and other statements regarding the Plan are qualified in their entirety by the**

25 **Plan itself, which is controlling in the event of any inconsistency. No representations or**

26 **assurances concerning the Debtor, including, without limitation, its operations, the value of**

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

its assets, or the future operations of Ivory Trading Company, are authorized by the Debtor other than as set forth in this Disclosure Statement. This is a solicitation by the Debtor only. The representations made herein are those of the Debtor and not its attorneys or any other professional. Portions of this Disclosure Statement describing the Debtor's financial condition have not been subjected to an independent audit, but prepared from information compiled by the Debtor from records maintained in the ordinary course of its operations. Reasonable efforts have been made to accurately prepare all financial information which may be contained in this Disclosure Statement from the information available to the Debtor. However, as to all such financial information, the Debtor is unable to warrant or represent that the information contained herein is without error.

As to contested matters, adversary proceedings and other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact, liability, stipulation or waiver, but rather as a statement made in settlement negotiations. The contents of this Disclosure Statement should not be construed as legal, business or tax advice to holders of claims against or equity interests in the Debtor. Creditors and equity interest holders should consult their own legal counsel or tax advisor on any questions or concerns respecting tax, securities, or other legal effects of the Plan on them.

Because this case is classified as a small business case under the Bankruptcy Code, pursuant to Bankruptcy Rule 3017.1, the Court may conditionally approve the Disclosure Statement and combine the hearing for the approval of a disclosure statement with a hearing on the confirmation of a plan. The Court has done so in this case. Under this procedure, the Debtor may solicit the acceptance or rejection of the Plan based upon the conditionally approved Disclosure Statement. The Debtor must provide adequate information to each holder of a claim or interest that is solicited.

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

## III.   THE DEBTOR'S HISTORY AND BUSINESS BACKGROUND

**A.   History and Business of the Debtor**

The Debtor was organized as an Oregon S-corporation in 2003. From its leased location in southeast Portland, the Debtor operates two businesses: a custom headwear embroidery and marketing business, as well as a business venture involving sale of wholesale light-gauge, galvanized, painted and cold-rolled steel. The Debtor's assets include cash on hand, accounts receivable, three embroidering machines, inventory, drawings, a customer list, steel racking and other miscellaneous items.

The Debtor's steel trading business has suffered from market fluctuations. In the aftermath of the financial crisis that began in 2008, Steel capacity in the United States fell sharply - from over 100 million metric tons in 2008 to 37 million tons in 2009. Steel markets began to improve in 2010, but the Debtor's main area of focus - the construction trade, including housing starts - didn't improve until mid-2013.

During the difficult times between 2008 and 2013, the Debtor generated losses that remain on its balance sheet today, including its unsecured debt to its largest vendor Nucor. The steel business began to see profits in late 2013. Net profits for 2014 were $27,550 Profits have continued to be strong in 2015 and the Debtor anticipates them to continue.

The headwear business was also impaired by the financial downturn. The headwear business sells to two primary market segments: the advertising specialty industry and the golf resort business, both of which significantly curtailed headwear purchases from 2009 through 2013, when the Debtor's headwear business suffered losses. In December 2012, the Debtor terminated its headwear general manager and Mr. Ivory ceased taking a salary. The headwear business lost $471,000 and $231,000 in 2012 and 2013, respectively. In 2014, the demand for promotional items like headwear began to strengthen and buyers placed increasingly larger orders. The Debtor acquired new accounts and strengthened preexisting accounts. That

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

momentum has continued into 2015.  Mr. Ivory began taking his regular salary again in January 2015.

The Debtor believes it can build upon this momentum by being more responsive to the needs of its customers.  In the past, it has lost sales when the lead time for sales - the time between the date the customer places an order and the date the order can be completed - has exceeded three weeks.  The Debtor's proposed purchase of the 15-head machine (described in Article VI C.) will increase the capacity of the headwear business and decrease lead time so that such sales will be retained.

The Debtor generated a $27,000 profit in 2014.  Through May 2015, the headwear business has generated a net profit of  $55,000 and steel a net profit of $109,000, for a combined net profit of  $164,000.  See Exhibit B.

**B.      Management of Ivory Trading.**

Michael Ivory is the president and sole director of Ivory Trading as of the date hereof.

**C.      Ivory Trading Interest Holders.**

Ivory Trading has one class of common stock, 100% of which is owned by Michael Ivory.

**D.      Related Party Transactions**

GIDI Promotions ("GIDI") is owned and operated by Kate Ivory, the wife of Michael Ivory.  Because of this relationship, GIDI is an insider of the Debtor as defined in section 101(31) of the Bankruptcy Code.  Prior to the Petition Date, GIDI was an unsecured lender to the Debtor, was a tenant of the Debtor's and was a customer of the Debtor.

1.      Prepetition Transfers:  During the year prior to the Petition Date, the Debtor received a number of loans from GIDI and repaid some, but not all of those loans.  The advances by GIDI and the payments by the Debtor to GIDI prior to the Petition Date are set forth on Exhibit C-1 hereto.  In summary, as a result of economic difficulties, the Debtor experienced a number of cash shortages.  These shortages jeopardized the Debtor's ability to purchase

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    materials necessary to fill orders, to make payroll, make payments to the Debtor's secured

2    lender, BOTW.  On a number of occasions prior to the Petition Date, GIDI advanced funds to the

3    Debtor on an unsecured basis.  During the year prior to the Petition Date, GIDI advanced

4    unsecured loans of $54,000 to the Debtor and received payments of $126,500 in respect of the

5    loans made during the year prior to the Petition Date and loans made prior to that date.

6         Under section 547 of the Bankruptcy Code, payments by the Debtor to creditors during

7    the ninety days prior to the Petition Date may be recovered as preferences if certain showings are

8    made.  The same provision applies to transfers to insiders, such as GIDI, for the year prior to the

9    Petition Date, again, if certain showings are made.  One such showing is that the payments

10   permitted the creditor to receive more than the creditor would have received in a liquidation of

11   the Debtor under Chapter 7 of the Code.  The Debtor has concluded that it is not in the best

12   interests of the estate or its creditors to pursue any such avoidance actions that may be available

13   under the Bankruptcy Code against insiders, such as GIDI, and non-insiders, including a claim

14   against GIDI in the gross amount of $97,000, subject to defenses.  The Debtor reached this

15   conclusion for the following reasons: (a) the Plan proposes to pay unsecured creditors in full,

16   meaning any recoveries would be repaid in full to such recipients; (b) time consuming and costly

17   litigation may be required to recover prepetition payments recipients, and the Debtor would not

18   have grounds for recovery of litigation costs; and (c) recipients would be entitled to assert

19   defenses, such as that any payments were followed by additional transfers to the Debtor of new

20   value and that the payments from the Debtor were in the ordinary course of business, and such

21   defenses would reduce the potential recoveries. In addition, the Debtor has reviewed the

22   potential preference claims that could be made against all parties who received prepetition

23   payments from the Debtor.  The Debtor's review did not reveal viable preference claims in any

24   meaningful amount (i.e., amounts in excess of $5,000).  Were the Debtor to pursue  such

25   avoidance actions, such efforts could result in net cash recoveries that would result in faster

26   payments to unsecured creditors under the Plan.

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2.    Unsecured Claims of Insiders: As a result of unpaid prepetition loans by GIDI to the Debtor, GIDI possesses an unsecured claim of $36,693.30 (the "GIDI Unsecured Claim"). The GIDI Unsecured Claim reflects amounts loaned by GIDI to the Debtor that were not repaid prior to the Petition Date. The amounts were advanced for acute needs of the Debtor's business, as summarized on Exhibit C-2. Upon confirmation, the GIDI Unsecured Claim will be waived.

Also prior to the Petition Date, Michael Ivory, the President and owner of the Debtor, incurred a number of business related expenses - primarily in the form of loans to the Debtor for urgent business operation needs - some of which were not reimbursed. The amount that remains outstanding, $32,510.93, constitutes the Ivory Unsecured Claim. The Ivory Unsecured Claim reflects amounts loaned by Ivory to the Debtor that were not repaid prior to the Petition Date. The amounts were advanced for acute needs of the Debtor's business, as summarized on Exhibit C-2. Upon confirmation, the Ivory Unsecured Claim, as well as any claim Mr. Ivory may be entitled to assert as a result of the fact that Mr. Ivory ceased taking a salary from December 2012 until January 2015, will likewise be waived.

3.    GIDI Sublease: Since 2006, GIDI has subleased an unutilized portion of the space leased by the Debtor, as described in Article VI E. below. GIDI has paid $2,000 per month for the use of the space as well as a prorated portion of utilities. The Debtor projects this unwritten arrangement will continue during the life of the Plan.

4.    GIDI as a Customer: Prior to the Petition Date and to the present, GIDI has ordered headwear products and services from the Debtor and has referred clients to the Debtor. These transactions haven occurred on ordinary business terms. The Debtor projects that such orders and referrals will continue throughout the life of the Plan.

## IV.    THE BANKRUPTCY CASE

**A.    Commencement of Bankruptcy Case.**

The Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 24, 2015. No trustee has been appointed, and

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

the Debtor has continued to manage its property and affairs as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B.      Official Committee of Unsecured Creditors.**

The Bankruptcy Code provides for the appointment of an official committee of unsecured creditors in a chapter 11 case to promote the interests of all unsecured creditors.  This committee is generally chosen from the twenty largest unsecured creditors and is appointed by the United States trustee.  No committee was appointed in this Bankruptcy Case.

**C.      Bank of the West**

The primary factor necessitating the chapter 11 filing by the Debtor was notice of BOTW that it intended to record a confession of judgment that had been executed by the Debtor.  BOTW began lending to the Debtor in 2004.  Through a series of extensions, the one-year facility was extended by BOTW through 2013.  Debtor and BOTW subsequently negotiated and executed a forbearance agreement, pursuant to which BOTW agreed to forbear from exercising its rights under the BOTW Loan Documents through December 31, 2014, based upon certain payments being made by Debtor at an interest rate of 4.75%.  The forbearance agreement required the Debtor and Mr. Ivory, personally, to execute a confession of judgment.  Debtor made all progress payments.  When Debtor did not pay all amounts due under the BOTW Loan on the stated maturity date, BOTW indicated it would record the confession of judgment after April 24, 2015.

**D.      Postpetition Finances**

The operating expenses of the Property are generally paid by revenues from the business. On May 7, 2015, the Bankruptcy Court entered an order authorizing use of cash collateral. Accordingly, since the commencement of the Bankruptcy Case, Debtor has accumulated revenue, has incurred operating expenses, and on and after May 7, 2015, made cash disbursements.  Debtor expects to incur approximately $50,000 in reorganization-related expenses during the course of this case.

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

# V. FINANCIAL INFORMATION

## A. Selected Financial Information

The following table shows the Debtor's income and expenses for the fiscal year ending December 31, 2014. More detailed financial data for the Debtor is set forth in Exhibits B, D and E.

|                        | Fiscal Year Ending 12/31/14 |
|------------------------|----------------------------:|
| Income Statement Data: |                             |
| Total revenues         | 1,369,187                   |
| Cost of Goods          | 625,567                     |
| Expenses               | 716,063                     |
| Net income             | 27,556                      |

The Debtor's balance sheet as of December 31, 2014 is as follows:

| Assets                  |            |
|-------------------------|-----------:|
| Cash                    | (4,504)    |
| Accounts Receivable     | 92,071     |
| Other Current Assets    | 518,323    |
| Fixed assets (Net Depr) | 7,896      |
| **Total assets**        | **613,786**|

| Liabilities                 |             |
|-----------------------------|------------:|
| Accounts payable            | 415,973     |
| Credit card                 | 1,827       |
| Payroll                     | 2,604       |
| Notes payable               | 572,047     |
| Long term liabilities       | 61,693      |
| **Total liabilities**       | **1,054,145**|
| **Shareholder equity**      | **(440,359)**|
| **Total liabilities & equity** | **613,786**|

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11   Doc 80-1   Filed 07/20/15

**B.    Claims**

    **1.    Secured Claims**

The Debtor is indebted to BOTW, the single creditor whose claim is secured, in whole or in part, by property owned by the Debtor or in which the Debtor asserts a security interest. Under the Plan, this claim is contained in Class 1.

In summary, Debtor is indebted to BOTW for a loan secured by a trust deed.  The Debtor scheduled the BOTW's secured claim in the amount of $533,056.56.

    **2.    Administrative Expense Claims**

Administrative Expense Claims consist primarily of (a) costs and expenses incurred in connection with the operation of the Debtor's business after the Petition Date, (b) claims of professionals who are or were employed at the expense of the Debtor's bankruptcy estates, to the extent allowed by the Court, and (c) fees and charges assessed against the bankruptcy estate under 28 U.S.C. § 1930, including quarterly fees payable to the United States Trustee.  Assuming the Effective Date of the Plan is on or around September 1, 2015, the Debtor projects that there will be no unpaid Administrative Expense Claims other than Fee Claims.  The Debtor estimates that the total outstanding Fee Claims will be $50,000.  Debtor's counsel possesses a retainer of $10,000, which will be drawn first, following Court approval of a properly noticed fee application.  Further amounts approved for Fee Claims will paid as set forth in the Debtor's projections.  Exhibit E.

    **3.    Priority Claims**

The Debtor estimates that there are no unpaid claims that arose before the Petition Date that are entitled to priority under section 507(a) of the Bankruptcy Code.

    **4.    Unsecured Claims**

The Debtor listed $371,808.72 in unsecured claims on its Schedules, including the GIDI Unsecured Claim in the amount of $36,693.30 and the Ivory Unsecured Claim in the amount of

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

$32,510.93, which will be waived under the Plan. The Bankruptcy Court set August 31, 2015 as the deadline for proofs of claim (other than certain government claims).

## VI.    DESCRIPTION OF THE PLAN

A discussion of the principal provisions of the Plan is set forth below. The discussion of the Plan that follows is a summary only and is qualified in its entirety by reference to the full text of the Plan itself. You are urged to read the Plan in full and make a thorough review of its terms in evaluating whether to accept or reject the Plan. If any inconsistency exists between the summary herein and the Plan, the terms of the Plan control.

### A.    Classification and Treatment of Claims and Interests.

#### 1.    Classification Generally.

The Plan designates Classes of Claims and Interests for purposes of voting on the Plan and making distributions. All Claims, other than Administrative Expense Claims and Priority Tax Claims, and all Equity Interests are placed in Classes under the Plan. A Claim is classified in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in one or more other Classes to the extent that any remainder of the Claim falls within the description of such other Classes.

#### 2.    Unclassified Claims

##### a.    Administrative Claims

Administrative Claims are claims incurred by the Debtor during the Bankruptcy Case. Each Administrative Claim other than Fee Claims accrued on or before, but unpaid as of, the Effective Date will be paid in full in Cash on the latest of: (i) the Effective Date; (ii) the date on which the Bankruptcy Court enters an order allowing such Administrative Claim; (iii) 30 days after the Claim is Allowed; or (iv) the date on which the Debtor and the holder of such Allowed Administrative Claim otherwise agree in writing. The Debtor does not believe that there will be any holders of Administrative Claims that are not Fee Claims.

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  **b.      Professional Fees**

2        Each professional person whose retention or appointment in these Bankruptcy Case has

3  been approved by the Bankruptcy Court, including counsel retained by the Debtor, accountants

4  and other advisors for the Debtor, has a Fee Claim against the estate.  Each professional shall file

5  with the Bankruptcy Court and serve on all parties required to receive notice a final fee

6  application within 45 days after the Effective Date.  The failure to timely file the fee application

7  as required under the Plan will result in the Fee Claim being forever barred and discharged.  All

8  Allowed Fee Claims shall be paid by the Reorganized Debtor from Cash from operations or

9  through application of any retainer held by such professional person.

10        **c.      Priority Tax Claims**

11        The Debtor does not believe there are any Priority Tax Claims.

12  **B.      Classified Claims**

13        A creditor will receive a distribution under the Plan only if such creditor is the holder of

14  an Allowed Claim.  Distributions under the Plan are in full satisfaction of all Claims.  The Plan

15  provides for classification and treatment of all Claims against the estate as follows:

16        **1.      Class 1.  BOTW Claim**

17        Class 1 is impaired by and entitled to vote on the Plan.  On or about the Effective Date,

18  the Reorganized Debtor will execute and deliver Amended Loan Documents to the Holder of the

19  Class 1 Claim.  The Amended Loan Documents will provide for repayment of the Allowed Class

20  1 Claim on the terms provided for in the Plan, which include: (a) beginning the first Business

21  Day after the first day of the month following the Effective Date, the Reorganized Debtor will

22  make monthly payments of principal and interest based on a seven-year amortization schedule at

23  4.75%; (b) the Reorganized Debtor shall continue to make substantially equal payments on the

24  first Business Day of each month thereafter; and (c) all unpaid amounts due on the Allowed

25  Class 1 Claim will be paid no later than the first Business Day of the sixtieth month following

26

117387-0001/LEGAL125928975.4

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 15-32026-pcm11     Doc 80-1     Filed 07/20/15

the Effective Date.  The Debtor estimates that the amount remaining on the sixtieth month will be approximately $180,000.

As security for the repayment of the Allowed Class 1 Claim under the Plan, BOTW will retain all liens and security interests in the Debtor's property existing on the Petition Date and limited by sections 552(a) and (b) of the Bankruptcy Code.  BOTW is granted no liens or security interests in any other property of the Debtor or Reorganized Debtor not existing on the Petition Date and in accordance with sections 552(a) and (b) of the Bankruptcy Code.

**2.      Class 2.  General Unsecured Claims (Over $13,000)**

Class 2 is comprised of holders of Allowed Unsecured Claims in excess of $13,000.00. Class 2 is impaired by and entitled to vote on the Plan.  Because the holder of the GIDI Unsecured Claim and the holder of the Ivory Unsecured Claim are insiders, they will not vote on the Plan.  Reorganized Debtor shall first pay to each holder of an Allowed Class 2 Claim, other than the holder of the GIDI Unsecured Claim and the holder the Ivory Unsecured Claim, in Cash, the amount of such Allowed claim without interest.  Each such holder will receive, beginning on first Business Day of the first month following the Effective Date, such holder's Pro Rata share of $5,000.  Reorganized Debtor shall continue to make substantially equal payments on the first Business Day of each month thereafter, until the principal amounts of Allowed Class 2 Claims are paid in full, without post-confirmation interest.  The Debtor estimates this will occur in sixty months.

**3.      Class 3.  Small Unsecured Claims (Under $13,000)**

Class 3 is comprised of holders of Allowed Unsecured Claims that are less than $13,000.00.  Class 3 is impaired by and entitled to vote on the Plan.  The Debtor scheduled five claims totaling $13,583, including the unsecured credit card claim of BOTW in the amount of $10,896. The Reorganized Debtor shall pay to each holder of an Allowed Class 3 Claim (or any holder of an Allowed Class 2 Claim that elects at any time prior to the Effective Date to reduce its Claim to $13,000), in Cash, the amount of such Allowed Claim without interest.  The Debtor

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1 does not anticipate any Class 2 creditors will elect to reduce their claims to participate in Class 3.

2 Each such holder of a participating Class 3 Claim will receive, on first Business Day after sixty

3 days after the Effective Date, payment in full, in cash, of its Allowed Claim without interest.

4 **4.      Class 4.  Equity Interests**

5 Class 4 is unimpaired and not entitled to vote on the Plan.  The  legal, equitable, and

6 contractual rights of the holder of the Equity Interests with respect to his Equity Interests shall

7 remain unaltered.

8 **C.      Plan Funding**

9 The Plan will be funded by a combination of the Debtor's Cash on hand as of the

10 Effective Date, Cash that is collected or generated by the Reorganized Debtor after the Effective

11 Date, and contributions made by Michael Ivory in his personal capacity.  In addition, during the

12 life of the Plan, the Debtor will implement an acquisition that the Debtor believes will increase

13 the Debtor's profitability.  Mr. Ivory has obtained the approval of the Bankruptcy Court to

14 purchase a Barudan America 15-Head Servo embroidering machine (No. BEXSF151C) for

15 approximately $105,500, drawing on a credit line facilitated by Maxwell Morgan LLC.  The loan

16 will be secured by a first lien on the machine and a second lien on the personal residence of Mr.

17 Ivory.  As soon as practicable following the purchase of the machine, the Debtor will grant to

18 BOTW a second lien on the machine.  Mr. Ivory will lease the machine to the Debtor with the

19 lease payment equal to the loan payments for the machine.  The Debtor will have the right to

20 terminate the lease in the event that the machine is not being sufficiently utilized.  At the

21 conclusion of the 60-month lease term, the Debtor will be entitled to purchase the machine for $1

22 and it will become property of the Debtor.  The Debtor believes that the machine will generate

23 net profits over the added costs of lease payments, as set forth on Exhibit F.

24

25

26

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

**D. Distributions to Creditors**

The provisions of the Plan that govern distributions to creditors and the resolution of disputed and contingent claims are set forth in Article 5 of the Plan. Certain of those provisions are summarized below.

**1. Distributions Generally**

Distributions under the Plan will be overseen by the management of the Reorganized Debtor and made on the dates specifically prescribed by the Plan. Distributions to be made by the Reorganized Debtor under the Plan ordinarily will be made by check drawn on a domestic bank. Withholding taxes and other amounts required to be withheld under applicable law will be deducted from distributions. Distributions to creditors pursuant to the Plan ordinarily will be delivered by First-Class mail, postage prepaid, in an envelope addressed as directed in a request served on the Reorganized Debtor as provided in the Plan, but if no such request is made, at the address shown in the Schedules, as they may from time to time be amended, or, if a different address is stated in a proof of claim duly filed with the Bankruptcy Court, to such address. Reorganized Debtor shall serve as the disbursing agent under the Plan.

**2. Limitations on Amending Claims**

Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim may be amended by the holder of such Claim solely to decrease, but not to increase, the amount of such Claim.

**E. Executory Contracts and Unexpired Leases**

The Debtor intends to assume the unexpired lease agreement pertaining to the Debtor's business premises. Debtor is not aware of any other executory contracts or unexpired leases to which it is a party. However, in the event that such agreements exist, they will be rejected on the Effective Date pursuant to the provisions of the Plan. The Debtor anticipates assuming the executory property lease and curing the $75,000 prepetition arrearage with payments over sixty months, as provided in the Plan with the consent of the lessor.

117387-0001/LEGAL125928975.4

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

## VII.    THE REORGANIZED DEBTOR

**A.    Ownership and Management**

**1.    Management**

The Plan provides that upon the occurrence of the Effective Date, existing management (described above in section III.B) will remain in place. Mr. Ivory will continue to receive $6,000 per month salary and benefits as he has prepetition during the Bankruptcy Case. Mr. Ivory's benefits include the following: medical insurance ($500 per month), payments for a 2013 Toyota Tacoma pickup ($505 per month), automobile insurance for Mr. Ivory and his family ($270 per month), life insurance ($240 per month), and membership at Columbia Edgewater Country Club (which he utilizes for business purposes, averaging $811 per month).

**B.    Financial Projections - Ivory Trading**

Ivory Trading has prepared financial projections on the treatment of the various claims under the Plan. Attached hereto as **Exhibit E** are projected monthly statements of cash flow statements as of and for the five fiscal yearly periods beginning on August 1, 2015.

An important component of the cashflow projections appearing in Exhibit E is that the Reorganized Debtor will be able to build cash reserves for business improvements. The Debtor believes that accumulation of cash reserves will enhance its ability to obtain financing to pay off the Class 1 Claim of BOTW.

## VIII.    VOTING ON THE PLAN

**A.    Voting Eligibility**

In general, a holder of a claim or interest may vote to accept or reject a plan if either (1) the claim or interest is "allowed," which means generally that it is not disputed, contingent or unliquidated in amount, and (2) the claim or interest is part of a class that is impaired by the plan. If a creditor or equity interest holder will not receive any distribution under a plan in respect of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and provides that the holder is not entitled to vote. On the other hand, if the claim or interest is part

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

of a class that is not impaired, the Bankruptcy Code conclusively presumes that holder of such claim or interest has accepted the plan and provides that the holder is not entitled to vote.  Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof, or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan (a) cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy), (b) reinstates the maturity of such claim or interest as it existed before the default, (c) compensates the holder of such claim or interest for any damages resulting from such holder's reasonable reliance on such legal right to an accelerated payment, and (d) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Under the Plan, only the holders of Allowed Claims (or of disputed claims that are temporarily allowed by the Bankruptcy Court for voting purposes) in Classes 1, 2 and 3 are entitled to vote.  As noted above, neither the holder of the GIDI Unsecured Claim nor the holder of the Ivory Unsecured Claim will vote.  The holders of Class 4 Equity Interests are not impaired and are deemed to have accepted the Plan.

**B.    Voting Deadline**

The deadline for submitting completed ballots is **5:00 p.m. (prevailing Pacific Time)** on August 19, **2015** (the "Voting Deadline").  Only those ballots that are actually received by the Voting Deadline will be counted as either accepting or rejecting the Plan.

**C.    Acceptance By a Class**

As a condition to confirmation, the Bankruptcy Code requires, among other things, that (1) at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider, and (2) except under certain circumstances, each class of claims or interests that is impaired under the plan accepts the plan. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by an impaired class of

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only the votes of those creditors who actually vote to accept or reject the plan.

Additionally, if creditors in a Class fail to (i) vote to either accept or reject the Plan and (ii) object to the Plan, such Class shall be deemed to accept the Plan.

## D.     Voting Procedures

### 1.     Submission of Ballots

A form of ballot is included among the materials that accompany this Disclosure Statement.  All votes to accept or reject the Plan must be cast by properly submitting a duly completed and executed ballot.  Ballots must be delivered to the Debtor's counsel as designated in the ballot at the address or fax number set forth on the ballot and must be received by the Voting Deadline.  The method of delivery of a ballot is at the election and risk of the voting creditor.  Please carefully follow the directions contained on the enclosed ballot.

### 2.     Incomplete Ballots

Any ballot received that (i) is not signed, (ii) does not contain sufficient information to permit the identification of the claimant, or (iii) does not indicate either an acceptance or rejection of the Plan or which indicates both acceptance and rejection of the Plan will be invalid and will not be counted as a vote cast with respect to the Plan.

### 3.     Withdrawal or Change of Votes

A ballot may be withdrawn by delivering a written notice of withdrawal to the Debtor's counsel at any time prior to the Voting Deadline.  Thereafter, a withdrawn ballot will not be effective unless approved by the Bankruptcy Court.  In order to be valid, a notice of withdrawal must (i) specify the name of the holder who submitted the vote on the Plan to be withdrawn, (ii) contain a description of the Claim to which it relates and (iii) be signed by the holder in the same manner as on the ballot.  The Debtor expressly reserves the absolute right to contest the validity of any such withdrawals of votes on the Plan.  Any creditor who has submitted to the

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Debtor's counsel a properly completed ballot prior to the Voting Deadline may change such vote by submitting to the Debtor's counsel prior to the Voting Deadline a subsequent properly completed ballot. In the case where more than one timely, properly completed ballot is received with respect to the same Claim, the ballot that bears the latest date will be counted.

**4.      Voting Multiple Claims.**

Only one form of ballot is provided for voting. Any creditor that holds a Claim in more than one Class is required to vote separately with respect to each Claim. Creditors with multiple Claims in the same Class shall have one Claim for voting and distribution purposes and all such amounts will be aggregated into one Claim and such creditor shall be entitled to submit only one ballot. Please sign, and return in accordance with the instructions on the ballot form, a separate ballot with respect to each such Claim.

**IX.      CONFIRMATION OF THE PLAN**

**A.      Confirmation Hearing.**

The Bankruptcy Court will hold a hearing to consider confirmation of the Plan at **9:30 a.m. on** August 26**, 2015** at United States Bankruptcy Court for the District of Oregon, 1001 SW 5th Avenue, #700, Courtroom 1, Portland, Oregon 97204. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date and time made at the confirmation hearing.

**B.      Deadline for Objecting to Confirmation.**

Any objection to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections, and must be filed with the Bankruptcy Court on or before **August 19, 2015 at 5:00 p.m**. (Prevailing Pacific Time).

**C.      Requirements for Confirmation.**

**1.      Confirmation Requirements Generally.**

The Bankruptcy Court can confirm the Plan only if all the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that (i) the plan

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

be accepted by all impaired classes of claims and of interests or, if rejected by an impaired class, the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) the plan is feasible, and (iii) the plan is in the "best interest" of creditors and stockholders that are impaired under the plan.

**2.      Feasibility.**

In connection with confirmation with the Plan, the Bankruptcy Court will have to determine that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation or reorganization is proposed in the Plan.  The Debtor believes it will be able to perform its obligations under the Plan.

**3.      Best Interests of Creditors.**

Section 1129(a)(7) of the Bankruptcy Code requires that any holder of a claim or interest in an impaired class that votes against a proposed plan must receive under the plan distributions that have a value, as of the effective date of the plan, at least equal to that which the holder would receive if the debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.  To determine what creditors and Equity Interest holders would receive if a debtor were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from a liquidation of its assets in the context of a hypothetical liquidation.  Such determination must take into account the fact that, as to each asset, all claims secured by that asset would have to be paid in full, as would all administrative expenses in the chapter 7 case and in the original bankruptcy case, before the balance of those proceeds would be made available to pay unsecured creditors and interest holders.  To determine if a plan is in the best interest of each impaired class, the present value of the distributions from the proceeds of the hypothetical liquidation of the assets (after subtracting the amount attributable to secured claims and administrative expenses of the bankruptcy case) must be compared with the present value of the consideration offered to each such class under the plan.  In addition, the rule of absolute priority of distribution

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

from a debtor's estate must be applied. Under that rule, no junior holder of a claim or equity interest may receive distributions under a plan unless the plan provides that all senior classes will be paid in full or unless all senior classes vote to accept the plan. After consideration of the effect that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to the debtor's creditors and interest holders (including (i) the increased cost and expense of liquidation under chapter 7 arising from fees payable to a chapter 7 trustee and the attorneys and other professional advisors to such trustee, (ii) the time value of money resulting from what is likely a more protracted proceeding, and (iii) the application of the rule of absolute priority to distributions in a chapter 7 case), the Debtor has determined that confirmation of the Plan will provide each creditor in an impaired Class with a greater recovery than such creditor would receive in a chapter 7 case concerning the Debtor.

Debtor estimates that in a liquidation case under chapter 7, general unsecured creditors would receive no cash distributions because substantially all of the Debtor's assets are fully encumbered by liens. A liquidation analysis for Ivory Trading is attached hereto as **Exhibit G**. All general unsecured creditors of Ivory Trading will recover more under the Plan than they would in a chapter 7 case.

**D.** **Confirmation Over Dissenting Class.**

The Bankruptcy Code permits confirmation of a plan even if it is not accepted by all impaired classes, as long as (a) the plan otherwise satisfies the requirements for confirmation, (b) at least one impaired class of claims has accepted it without taking into consideration the votes of any insiders in such class, and (c) the plan is "fair and equitable" and does not "discriminate unfairly" as to any impaired class that has not accepted the plan. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code.

117387-0001/LEGAL125928975.4

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### 1. Fair and Equitable.

The Bankruptcy Code establishes different "cramdown" tests for determining whether a plan is "fair and equitable" to dissenting impaired classes of secured creditors, unsecured creditors, and equity interest holders as follows:

#### a. Secured Creditors.

A plan is fair and equitable to a class of secured claims that rejects the plan if the plan provides: (a) that each holder of a secured claim included in the rejecting class (i) retains the lien securing its claim to the extent of the allowed amount of such claim, whether the property subject to that lien is retained by the debtor or transferred to another entity, and (ii) receives on account of its secured claim deferred cash payments having a present value, as of the effective date of the plan, at least equal to such holder's interest in the estate's interest in such property; (b) that each of the holders of the secured claims included in the rejecting class realizes the "indubitable equivalent" of its allowed secured claim; or (c) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of such liens with such liens to attach to the proceeds of sale, and the treatment of such liens on proceeds in accordance with clause (a) or (b) of this paragraph.

#### b. Unsecured Creditors.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides that: (a) each holder of a claim included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan, equal to the amount of its allowed claim (including payment of interest); or (b) the holders of claims and interests that are junior to the claims of the rejecting class will not receive or retain any property under the plan.

#### c. Holders of Interests.

A plan is fair and equitable as to a class of interests that rejects the plan if the plan provides that: (a) each holder of an equity interest included in the rejecting class receives or

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    retains under the plan property of a value, as of the effective date of the plan, equal to the

2    greatest of the allowed amount of (i) any fixed liquidation preference to which such holder is

3    entitled, (ii) the fixed redemption price to which such holder is entitled, or (iii) the value of the

4    interest; or (b) the holder of any interest that is junior to the interests of the rejecting class will

5    not receive or retain any property under the plan.

6        The Debtor believes that the Plan and the treatment of all impaired Classes under the Plan

7    satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

8        **2.**      **Unfair Discrimination.**

9        A plan of reorganization does not "discriminate unfairly" if a dissenting class is treated

10    substantially equally with respect to other classes similarly situated and no class receives more

11    than it is legally entitled to receive for its claims or interests. The Debtor believes that the Plan

12    does not discriminate unfairly against any impaired Class.

13   **E.**     **Effects of Confirmation.**

14        **1.**      **Vesting of Estate Property.**

15        As of the Effective Date, the Reorganized Debtor shall be revested with title to all

16    property of its estate, free and clear of all liens, Claims and other interests, except to the extent

17    provided in the Plan or in the Confirmation Order. As of the Effective Date, the Debtor may use

18    and dispose and otherwise deal with such property and may conduct its affairs, in each case,

19    without supervision of the Bankruptcy Court and free of any restrictions imposed by the

20    Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the

21    Plan or the Confirmation Order.

22        **2.**      **Discharge.**

23        Except, as otherwise provided in the Plan or in the Confirmation Order, on the Effective

24    Date, pursuant to section 1141(d) of the Bankruptcy Code, Debtor shall be discharged from all

25    liability on any and all Claims against the Debtor that arose at any time before the Effective Date

26    .

117387-0001/LEGAL125928975.4

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1       **3.**      **Effect on Insurance Policies.**

2       Section 8.8 of the Plan addresses insurance policies issued to the Debtor and the various

3 agreements related to such policies.

4       **4.**      **Tax Exposure.**

5       The Debtor does not believe implementation of the Plan will result in difference in the

6 tax liabilities owed by the Reorganized Debtor.  In particular, because the Debtor proposes to

7 pay all creditors in full, the Debtor does not anticipate an increase in tax liabilities resulting from

8 forgiveness of debt income.  In addition, to the extent that any increase in tax exposure should

9 occur, the Debtor retains net operating loss carry-forwards of approximately $180,000.

10         **X.**      **ALTERNATIVES TO THE PLAN**

11       The Debtor believes that the Plan affords its creditors the greatest opportunity for

12 realization on their assets and the greatest possible value that could be realized on their claims.

13 The Debtor also believe that the Plan is fair and reasonable in its treatment of all constituencies.

14 Possible alternatives to the Plan which might arise if the Plan is rejected or if the Bankruptcy

15 Court refuses to confirm the Plan include (i) dismissal of the Bankruptcy Case; (ii) conversion of

16 the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, which would entail the

17 mandatory appointment of a trustee; (iii) submission by the Debtor of an alternative plan or the

18 filing by another party in interest of an alternative or competing plan; and (iv) the appointment of

19 a chapter 11 trustee for the purpose of operating the Debtor's business activities, administering

20 the Debtor's assets, and filing an alternative plan.

21         **XI.**      **RISK FACTORS**

22       This Disclosure Statement contains forward-looking statements that involve risks and

23 uncertainties.  The Debtor's income is dependent on a revenue stream generated by its business

24 ventures.  As such, any risk effecting the custom headwear and wholesale steel businesses

25 (including but not limited to changing economic conditions in the surrounding area, and

26 condemnation through eminent domain) could have negative impacts on the Debtor.

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

The foregoing discussion of risk factors is intended to be a non-exclusive summary of certain of those risks and uncertainties. Creditors should consider carefully these risks and are encouraged to supplement this summary with their own analysis and evaluation of the Plan.

## XII.    FEDERAL TAX CONSEQUENCES OF THE PLAN

**Circular 230 Notice:  We must inform you that to ensure compliance with the requirements imposed by the Internal Revenue Service, any federal tax advice contained in this document relating to federal taxes, was not intended or written to be used or relied upon, and it cannot be used or relied upon, for the purpose of avoiding tax related penalties that may be imposed under federal tax law.  Under these rules, a taxpayer may rely on professional advice to avoid federal tax penalties only if that advice is reflected in a comprehensive tax opinion that conforms to stringent requirements under federal law. This discussion was written in connection with the Debtor soliciting acceptances of the Plan through this Disclosure Statement.**

**A.    Scope of Discussion.**

The following discussion summarizes in general terms certain material federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice.  This summary does not address the federal income tax consequences of the Plan to holders of priority claims or of secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply.  No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan.  The Debtor is not making any representations regarding the particular tax consequences of confirmation and consummation of the Plan as to creditors or Equity Interest

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

holders, nor the Debtor or its professionals rendering any form of legal opinion or tax advice as to such tax consequences. The tax laws applicable to corporations in bankruptcy are complex and are subject to significant uncertainties. Each creditor and shareholder is urged to consult his, her or its own tax advisor as to the consequences of the Plan under federal and applicable state, local and foreign tax laws. Accordingly, the following summary of federal income tax consequences of the Plan is for informational purposes only and should not be construed as tax advice.

**B.     Tax Consequences to Holders of General Unsecured Claims.**

Except as otherwise provided under the Plan, holders of Allowed Unsecured Claims will receive one or more Cash distributions in full satisfaction of their Claims. In connection with the implementation of the Plan, each holder of an Allowed Unsecured Claim generally will recognize gain or loss for federal income tax purposes. The timing and amount of that gain or loss will depend upon a number of factors, including whether the holder reports income as an accrual basis taxpayer or as a cash basis taxpayer, whether the holder will receive multiple distributions pursuant to the Plan and whether the Debtor's obligations to make payments will be treated as a new debt obligation for federal income purposes.

In addition, the character of any gain or loss recognized by a creditor as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which the creditor's claim arose constitutes a capital asset in the hands of the creditor, whether the obligation from which the claim arose has been held for more than one year, the allocation of any distributions received between principal and unpaid accrued interest, whether and to what extent the creditor has previously claimed a bad debt deduction, and the extent (if any) to which interest may be imputed where multiple distributions are received.

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

Case 15-32026-pcm11     Doc 80-1     Filed 07/20/15

Because each creditor's circumstances may be different, each creditor is urged to consult his, her or its own tax advisor regarding the specific federal income tax consequences to that creditor of implementation of the Plan.

## XIII.   CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation and implementation of the Plan is preferable to any alternative because it will provide the greatest recoveries to its creditors.  For this reason, the Debtor urges all creditors entitled to vote to accept the Plan.

DATED:  July 20, 2015

**PERKINS COIE** LLP

By: /s/ Douglas R. Pahl
　　　Douglas R. Pahl, OSB No. 950476
　　　DPahl@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Debtor
Ivory Trading Company, Inc.

PAGE   29-   SECOND AMENDED DISCLOSURE
　　　　　　　STATEMENT

**PERKINS COIE** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928975.4

**EXHIBIT A**

**Plan of Reorganization**

EXHIBIT A

1     Douglas R. Pahl, OSB No. 950476
       DPahl@perkinscoie.com
2     PERKINS COIE LLP
       1120 NW Couch Street, 10th Floor
3     Portland, Oregon 97209
       Telephone: 503-727-2000
4     Facsimile: 504 346-2222

5     Attorneys for Debtor
       Ivory Trading Company, Inc.

6

7

8

## UNITED STATES BANKRUPTCY COURT

9

## FOR THE DISTRICT OF OREGON

10

11   In re

12   Ivory Trading Company, Inc.

13                 Debtor.

Case No. 15-32026-pcm11

**DEBTOR'S CHAPTER 11 FIRST AMENDED PLAN OF REORGANIZATION**

14

15       Ivory Trading Company, Inc. proposes the following plan of reorganization pursuant to

16   section 1121(a) of the Bankruptcy Code.

17       **All creditors are encouraged to consult the Disclosure Statement before voting to**

18   **accept or reject this Plan. The Disclosure Statement contains a discussion of the Debtor's**

19   **prepetition and postpetition activities and a summary and analysis of this Plan.**

20

21                      **ARTICLE 1**
           **DEFINITIONS AND RULES OF CONSTRUCTION**

22

23       Whenever from the context it appears appropriate, each term stated in either the singular

24   or the plural shall include the singular and the plural, and pronouns stated in the masculine,

25   feminine or neuter shall include the masculine, feminine and the neuter. The words "herein,"

26   "hereto," "hereof," "hereunder" and others of similar import refer to this Plan as a whole and not

PAGE   1-     FIRST AMENDED PLAN OF REORGANIZATION

117387-0001/LEGAL125928981.3

to any particular article, section, subsection, or clause contained in this Plan. Any term used in this Plan that is not herein defined but is used in the Bankruptcy Code shall have the meaning assigned to the term in the Bankruptcy Code.

The rules of construction used in section 102 of the Bankruptcy Code will apply to the construction of this Plan.

Unless the context requires otherwise, the following words and phrases shall have the meaning set forth below when used in initially capitalized form in this Plan:

**"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses of preserving the Estate and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the Petition Date, compensation for legal and other services and reimbursement of expenses awarded under section 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and all fees and charged assessed against the Estate under section 1930 of title 28 of the United States Code.

**"Allowed"** means with respect to Claims: (i) any Claim against the Debtor, proof of which is timely Filed, or which by order of the Bankruptcy Court is not or will not be required to be Filed; or (ii) any Claim that has been or is hereafter listed in the Schedules Filed by the Debtor as liquidated in amount and not disputed or contingent and in each case as to which either (a) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (b) such an objection is so interposed and the Claim will have been allowed by a Final Order (but only to the extent so allowed), or (iii) any Claim Allowed pursuant to this Plan. A Claim is not an Allowed Claim merely because it has been described, treated or defined in this Plan. Except as specifically provided, an Allowed Claim will not include interest on the principal amount of such

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Claim from and after the Petition Date. Notwithstanding the foregoing, Claims will be Allowed to the extent that this Plan provides that they are deemed Allowed.

**"Avoidance Actions"** means all avoidance claims arising under Chapter 5 of the Bankruptcy Code or otherwise and the proceeds thereof, of whatever kind or nature, and whether asserted or unasserted, including, but not limited to, all avoidance actions instituted pursuant to sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

**"Bankruptcy Case"** means *In re Ivory Trading Company, Inc. dba Ivory Headwear, Co.*, Case No. 15-32026-pcm11, currently pending in the Bankruptcy Court.

**"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Oregon.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code, as amended from time to time, and any and all applicable local rules of the Bankruptcy Court, as the same may from time to time be in effect and applicable to the Bankruptcy Case and other related proceedings.

**"Bar Date"** means August 31, 2015, the date set pursuant to the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines (ECF No. 8) as the last date to file proofs of claim against the Debtor.

**"BOTW Loan Documents"** means that certain Promissory Note in the original principal amount of $2,000,000.00, dated as of September 13, 2004, made by Debtor to the order of BOTW, and all other associated instruments and documents.

**"BOTW"** means Bank of the West, or any assignee of all or part of BOTW's Class 1 Claim.

**"Business Day"** means any day other than a Saturday, Sunday or a "legal holiday" listed in Bankruptcy Rule 9006(a).

PAGE 3- FIRST AMENDED PLAN OF REORGANIZATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

117387-0001/LEGAL125928981.3

"**Cash**" means legal tender issued by the government of the United States of America irrespective of the method of payment.

"**Causes of Action**" means any and all causes of actions of the estate, of whatever kind or nature, and whether asserted or unasserted, including, without limitation Avoidance Actions.

"**Claim**" means (i) a right to payment from the Estate (including, without limitation, a guaranty), whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) a right to an equitable remedy for breach of performance from the Estate if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"**Class**" means a Class of Claims or Interests, as described in Article 3 of this Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

"**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court confirming this Plan.

"**Creditor**" means an entity with a Claim against the Debtor, consistent with the definition set forth in section 101(10) of the Bankruptcy Code.

"**Cure**" means the distribution of Cash, or such other property or undertaking as may be agreed on by the parties, with respect to the assumption of an executory contract or unexpired lease under section 365(b) of the Bankruptcy Code, in an amount equal to all accrued, due and unpaid monetary obligations, without interest, as of the Effective Date, or such other amount as may be agreed on by the parties, under such executory contract or unexpired leases, to the extent such obligations are enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

117387-0001/LEGAL125928981.3

"**Debtor**" means Ivory Trading Company, Inc. dba Ivory Headwear, Co.

"**Disclosure Statement**" means the disclosure statement, dated May 26, 2015, as amended, supplemented or modified from time to time, describing the Debtor's Plan of Reorganization dated May 26, 2015, prepared in accordance with section 1126(b) of the Bankruptcy Code.

"**Disputed Claim**" means (i) a Claim against the Debtor that was not timely Filed; (ii) a Claim against the Debtor, to the extent that a proof of Claim has been timely Filed or deemed timely Filed under applicable law, as to which an objection has been timely Filed by the Debtor or any other party in interest and which objection has not been withdrawn and has not been denied by a Final Order; (iii) a Claim for which no proof of claim was Filed and that was listed in the Schedules as contingent, disputed or unliquidated; and (iv) the Claim of any creditor appealing the Confirmation Order.

"**Distribution Date**" means as to each Class of Claims, the date on which distributions are to be made as set forth in this Plan.

"**Effective Date**" means the day that (i) is at least fifteen days after the Confirmation Date and (ii) all conditions precedent to this Plan as set forth in Section 7.1 have been satisfied, or, if such date is not a Business Day, the next succeeding Business Day; provided, that if a stay of the Confirmation Order is then in effect, the Effective Date will be the first Business Day after the stay is lifted.

"**Entity**" means any individual, corporation, limited liability company or similar entity, limited or general partnership, joint venture, association, joint stock company, estate, entity, trust, trustee, U.S. Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"**Equity Interest**" means any equity interest in the Debtor represented by any certificated or uncertificated shares or membership interest issued to any person before the Effective Date, and any warrants, options, or rights to purchase any equity interest in the Debtor.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

"**Estate**" means the estate of the Debtor created by section 541 of the Bankruptcy Code, including all Causes of Action.

"**Fee Claim**" means a Claim under sections 326, 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Bankruptcy Case.

"**Filed**" means filed with the Bankruptcy Court in the Bankruptcy Case.

"**Final Order**" means an order, ruling or judgment that is no longer subject to review, reversal, modification or amendment by appeal or writ of certiorari.

"**Loan Modification**" means the agreement amending the BOTW Loan Documents, in substantially the form attached hereto as **Exhibit 1**.

"**GIDI Unsecured Claim**" means the scheduled Allowed unsecured claim of GIDI Productions in the amount of $36,693.30.

"**Ivory Unsecured Claim**" means the scheduled Allowed unsecured claim of Michael Ivory Productions in the amount of $32,510.93.

"**Petition Date**" means April 24, 2015, the date this Bankruptcy Case was commenced.

"**Plan**" means this chapter 11 plan of reorganization together with all exhibits and attachments hereto, either in its present form or as it may be altered, amended or modified pursuant to section 9.2 of this Plan and applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

"**Priority Claim**" means any Claim, other than a Priority Tax Claim or an Administrative Claim, which is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

"**Priority Tax Claim**" means any Claim that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

"**Pro Rata**" means at any particular time, with respect to each Class of Claims, the same proportion that the Allowed amount of a Claim in such Class of Claims bears to the aggregate of: (i) the Allowed amount of all such Claims, plus (ii) the aggregate asserted amount of all

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Disputed Claims of such Class of Claims, as reduced from time to time as and to the extent that the Allowed amount of such Claim is determined.

**"Rejection Claim"** means a Claim arising from the Debtor's rejection of an executory contract or unexpired lease either during the Chapter 11 Cases or under the Plan, other than a Claim for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease after the Petition Date and before the effective date of the rejection of that contract or lease.

**"Reorganized Debtor"** means Debtor after the Effective Date.

 **"Schedules"** means the schedules of assets and liabilities Filed by the Debtor with the Bankruptcy Court in accordance with section 521(a)(1) of the Bankruptcy Code, including any supplements or amendments made thereto pursuant to Bankruptcy Rule 1009.

**"Secured Claim"** means any Claim that is secured by a validly existing and properly perfected security interest, either by deed of trust, mortgage or financing statement, or pursuant to applicable law, in property of the Debtor.

**"U.S. Trustee"** means the Office of the United States Trustee.

**"Unsecured Claims"** means all Allowed Claims not otherwise classified or designated in this Plan.

**ARTICLE 2**
**PROVISIONS FOR TREATMENT OF ADMINISTRATIVE**
**AND PRIORITY TAX CLAIMS**

2.1     **Unclassified Claims**.  Under Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on the Plan but, rather, are treated separately in accordance with this article and under Bankruptcy Code § 1129(a)(9)(A).

2.2     **Administrative Claims**.  Each Allowed Administrative Claim (other than a Fee Claim) is paid in full in Cash (or otherwise satisfied in accordance with its terms) on the

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

1  latest of: (a) the Effective Date, or as soon after that date as feasible; (b) any date the Bankruptcy

2  Court may fix, or as soon after that date as feasible; (c) 30 days after the Claim is Allowed; and

3  (d) any date on which the holder of the Claim and the Debtor or Reorganized Debtor agree;

4  provided, however, that Administrative Claims representing indebtedness or other obligations

5  incurred in the ordinary course of business of the Debtor will be paid in accordance with any

6  terms and conditions of any agreement or order relating thereto.

7      **2.3      Professional Fees**.  Each Allowed Fee Claim is paid in full in Cash on the

8  latest of: (a) three Business Days after the Fee Claim is Allowed; and (b) another date on which

9  the holder of the Fee Claim and the Debtor or Reorganized Debtor agree. Each Person seeking an

10  award by the Bankruptcy Court of professional fees must File and serve on the Debtor or

11  Reorganized Debtor its final application for allowance of compensation for services rendered and

12  reimbursement of expenses incurred through the Effective Date no later than 45 days after the

13  Effective Date.   The failure to timely file the fee application as required under this section will

14  result in the Fee Claim being forever barred and discharged.  A Fee Claim with respect to which

15  a fee application has been properly Filed pursuant to this section will become an Allowed

16  Administrative Claim only to the extent allowed by Final Order.

17      **2.4      Priority Tax Claims**.  Except as provided in this section, all Allowed Priority

18  Tax Claims are paid in full in Cash on the latest of: (a) the Effective Date (or as soon after that

19  date as feasible); and (b) 30 days after the Claim is Allowed.  Reorganized Debtor may elect to

20  pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total

21  value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending

22  not later than five years after the Petition Date, and in a manner not less favorable than the most

23  favored Unsecured Claim provided for by the Plan.  Accordingly, if Reorganized Debtor so

24  elects, the installment payments will be made in the same manner as the installment payments

25  made on account of the Allowed Unsecured Claims in Class 2, beginning on the latest of: (a) the

26  Effective Date, or as soon after that date as feasible; (b) 30 days after the Claim is Allowed, or as

PAGE  8-    FIRST AMENDED PLAN OF REORGANIZATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

soon after that date as feasible; and (c) another date on which the holder of the Claim and the Debtor or Reorganized Debtor agree. Reorganized Debtor retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

**ARTICLE 3**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

      **3.1**      **Class 1 – BOTW Claim**. Class 1 consists of the Allowed Secured Claim of BOTW in the amount of $533,056.56.

      **3.1.1**      **Impairment and Voting**. Class 1 is impaired. BOTW is entitled to vote on the Plan.

      **3.1.2**      **Treatment**. The Allowed Class 1 Claim will receive the following treatment:

      (a)      On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor and BOTW shall execute and deliver the Loan Modification. The provisions of the BOTW Loan Documents will remain unchanged, except as modified by the Plan and the Loan Modification.

      (b)      Through and including the sixtieth month following the Effective Date, interest will accrue on the unpaid balance of the Allowed Class 1 Claim at 4.75%.

      (c)      The Allowed Class 1 Claim shall be paid as follows: (a) beginning the first Business Day after the first day of the month following the Effective Date, the Reorganized Debtor will make monthly payments of principal and interest based on a seven-year amortization schedule at 4.75%; (b) the Reorganized Debtor shall continue to make substantially equal payments on the first Business Day of each month thereafter; and (c) all unpaid amounts due on the Allowed Class 1 Claim will be paid no later than the first Business Day of the sixtieth month following the Effective Date.

117387-0001/LEGAL125928981.3

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1　　　　　　　(d)　　　Reorganized Debtor retains the right to prepay the Allowed Class 1 Claim,

2　in full or in part, at any time on or after the Effective Date without premium or penalty.

3　　　　　　　(e)　　　As security for the repayment of the Allowed Class 1 Claim under the

4　Plan, BOTW will retain all liens and security interests in the Debtor's property existing on the

5　Petition Date and limited by sections 552(a) and (b) of the Bankruptcy Code.  BOTW is granted

6　no liens or security interests in any other property of the Debtor or Reorganized Debtor not

7　existing on the Petition Date and in accordance with sections 552(a) and (b) of the Bankruptcy

8　Code.

9　　　　**3.2**　　　　**Class 2 – General Unsecured Claims**.  Class 2 consists of all Allowed

10　Unsecured Claims in amounts in excess of $13,000.

11　　　　　　**3.2.1**　　　**Impairment and Voting**.  Class 2 is impaired.  Holders of Allowed

12　Class 2 Claims are entitled to vote on the Plan.

13　　　　　　**3.2.2**　　　**Treatment**.  The Reorganized Debtor shall pay to each holder of an

14　Allowed Class 2 Claim, in Cash, the amount of such Allowed Claim without interest.  Each such

15　holder will receive, beginning on first Business Day of the first month following the Effective

16　Date, such holder's Pro Rata share of $5,000.  Reorganized Debtor shall continue to make

17　substantially equal payments on the first Business Day of each month thereafter, until Allowed

18　Class 2 Claims are paid in full.  Debtor estimates that Allowed Class 2 Claims will be paid in full

19　in sixty months.

20　　　　**3.3**　　　　**Class 3 – Small Unsecured Claims**.  Class 3 consists of all Allowed

21　Unsecured Claims in amounts less than $13,000.

22　　　　　　**3.3.1**　　　**Impairment and Voting**.  Class 3 is impaired.  Holders of Allowed

23　Class 3 Claims are entitled to vote on the Plan.

24　　　　　　**3.3.2**　　　**Treatment**.  The Reorganized Debtor shall pay to each holder of an

25　Allowed Class 3 Claim (or any holder of an Allowed Class 2 Claim that elects at any time prior

26　to the Effective Date to reduce its Claim to $13,000), in Cash, the amount of such Allowed

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Claim without interest.  Each such holder will receive, on first Business Day after sixty days after the Effective Date, payment in full, in cash, of its Allowed Claim without interest.

**3.4**     **Class 4 – Equity Interests**.  Class 4 consists of the holder of the Equity Interests outstanding as of the Effective Date.

**3.4.1**     **Impairment and Voting**.  Class 4 is unimpaired and holder of the Equity Interests is not entitled to vote on the Plan.

**3.4.2**     **Treatment**.  All legal, equitable, and contractual rights of the holder of Equity Interests with respect to his Equity Interests shall remain unaltered.

**ARTICLE 4**
**MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

**4.1**     **Effective Date Transactions**.  Cash payments on and after the Effective Date on account of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims under the Plan, and any Cure required under Section 6.3 of the Plan, are made from the Debtor's Cash.  The Debtor must reserve sufficient Cash on the Effective Date to make all required payments on account of Administrative Claims, Priority Claims, and Cure amounts. All Cash not so reserved vests in Reorganized Debtor on the Effective Date.  Any Cash remaining on reserve after all Administrative Claims, Priority Tax Claims, Priority Claims and Cure amounts have been either Disallowed or Allowed and paid in accordance with the Plan vests in Reorganized Debtor.

**4.2**     **Amendment of Articles of Incorporation**.  Debtor shall amend its articles of incorporation and bylaws as necessary to comply with the provisions of section 1123(a)(6) of the Bankruptcy Code and otherwise in a manner not inconsistent with this Plan.

**4.3**     **Continuation of Business**.  From and after the Effective Date, the Reorganized Debtor shall operate its business in a manner consistent with this Plan.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

1    **4.4    Management and Operations**.

2        **4.4.1    Initial Board of Directors**.  The initial board of directors of Reorganized

3    Debtor as of the Effective Date is comprised of the following director:  Michael Ivory.

4        **4.4.2    Initial Officers**.  The initial officer of Reorganized Debtor as of the

5    Effective Date is Michael Ivory, president.

6    **4.5    Plan Funding**.  This Plan will be funded by a combination of the Debtor's

7    Cash on hand as of the Effective Date, Cash that is collected or generated by the Reorganized

8    Debtor after the Effective Date, and, if necessary, a new value contribution made by Mr. Ivory,

9    the sole holder of the Equity Interests.

10    **4.6    Preservation of Causes of Action and Avoidance Actions**.  Except as

11    otherwise provided in orders entered in the Bankruptcy Case, all Causes of Action and

12    Avoidance Actions are preserved and reserved for later adjudication in accordance with this

13    Plan, and therefore no preclusion doctrine, including, without limitation, the doctrines of *res*

14    *judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or

15    otherwise) or laches will apply to those claims or causes of action on or after Confirmation or the

16    Effective Date.  The failure to specifically list or otherwise identify an Avoidance Claim or

17    Cause of Action in this Plan or the Disclosure Statement:  (i) is not intended to effect, and to the

18    extent permitted by law will not be deemed to effect a release or waiver of such Avoidance

19    Claim or Cause of Action; and (ii) is not intended to impair, and to the extent permitted by law

20    will not impair, the Reorganized Debtor's right to pursue such an Avoidance Claim or Cause of

21    Action.

22    **4.7    Performance of Plan Obligations by Reorganized Debtor.**  The

23    Reorganized Debtor shall: (i) in the exercise of its business judgment, review all Claims and, as

24    advisable, file objections, settle, compromise, withdraw, or litigate objections to Claims; (ii) in

25    the exercise of its business judgment, enforce, sue on, or settle and compromise Causes of

26    Action; (iii) serve as the disbursing agent, without bond, for purposes of making distributions to

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

Creditors and other in accordance with this Plan; and (iv) otherwise perform its obligations under this Plan, in each case, as and when the same become due to be paid or performed.

## ARTICLE 5
## PROVISIONS GOVERNING DISTRIBUTIONS AND DISPUTED CLAIMS

**5.1** **Timing of Distributions**. Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under this Plan shall be made on the Effective Date and on each Distribution Date, or, in each case, as soon thereafter as is practicable.

**5.2** **Form of Payment**. Unless otherwise agreed by the Reorganized Debtor, each Cash distribution pursuant to this Plan will be made by check. If the payee requests that distributions be made by electronic fund transfer, the payee shall be responsible for payment of any associated fees.

**5.3** **Withholding Taxes**. In connection with the Plan, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law will be deducted from distributions made under the Plan. All entities holding Claims shall provide Debtor or Reorganized Debtor with any information necessary to effect the withholding or reporting of such amounts. The Reorganized Debtor may make receipt of such information a condition for distribution of funds.

**5.4** **Third Party Recoveries**. To the extent that the holder of a Claim entitled to payment under this Plan receives payment in full or in part on any amounts asserted against the Debtor, such Claim shall be reduced by the amount of any such payment or distribution.

**5.5** **Undeliverable or Unclaimed Distributions**. For a period of 180 days after any particular distribution is made pursuant to this Plan, distributions that are unclaimed, including (i) checks that have been returned as undeliverable without a proper forwarding address, and (ii) checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same, will be distributed to the holders of Allowed Claims

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

1   entitled thereto upon presentment to the Reorganized Debtor of satisfactory proof of entitlement.

2   The Reorganized Debtor shall make a reasonable effort to ascertain the correct mailing address

3   from information generally available to the public for each holder of an Allowed Claim whose

4   check or other property cannot be mailed or delivered because of the absence of a proper address

5   or whose check has been returned without a proper forwarding address.  On the first day after the

6   expiration of such 180-day period: (i) holders of Allowed Claims previously entitled to such

7   undeliverable or unclaimed distribution are no longer entitled to such distribution, and (ii) such

8   Claims are deemed disallowed for all purposes, including any future distributions.  Pursuant to

9   section 347(b) of the Bankruptcy Code, all disbursements made under this Plan that remain

10   unclaimed as set forth herein will become property of the Reorganized Debtor.

11        **5.6**        **Time Bar to Cashing Distribution Checks**.  Reorganized Debtor may (but

12   shall not be obligated to) stop payment on any check issued by it in respect of Allowed Claims if

13   such check is not presented for payment within 60 days after the date of issuance thereof.  Any

14   request for reissuance of any check shall be made to the Reorganized Debtor in accordance with

15   this Plan, by the holder of the Allowed Claim to whom such check originally was issued, prior to

16   the expiration of the 180-day period set forth in Section 5.5 of this Plan.  After such date, the

17   holder of any such Claim who has failed to make a timely request for reissuance of such a voided

18   check shall not be entitled to any other or further distribution under this Plan on account of such

19   voided check or such Claim.

20        **5.7**        **Transmittal of Distributions and Notices**.  Any property or notices,

21   including distributions, that an entity is or becomes entitled to receive pursuant to this Plan may

22   be delivered by regular mail, postage prepaid, in an envelope addressed to that entity at the

23   address indicated on a properly Filed proof of claim or, absent such a proof of claim, the address

24   that is listed on the Schedules; *provided, however*, that a holder of a Claim may designate a

25   different address for notices and distributions by notifying the Reorganized Debtor of a change

26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

117387-0001/LEGAL125928981.3

1  of address in writing.  The new address shall be effective upon receipt by the Reorganized

2  Debtor of such notice.

3  **5.8**  **Disputed Claims**.  Except as otherwise provided in the Plan, after the

4  Effective Date, only the Reorganized Debtor has the authority to file objections to Claims (other

5  than Administrative Expense Claims), or to settle, compromise, withdraw, or litigate such

6  objections.  Except as otherwise specifically provided in the Plan or the Confirmation Order, all

7  objections to Claims other than Administrative Expense Claims must be Filed no later than

8  120 days after the Effective Date, unless such period is extended by order of the Bankruptcy

9  Court.

10  No disbursement shall be made on account of a Disputed Claim as to which an objection

11  has been interposed or as to which a counterclaim or setoff has been asserted, unless and until the

12  objection, counterclaim, or setoff is finally resolved and such Disputed Claim is Allowed.  Once

13  a Disputed Claim is Allowed, the Reorganized Debtor shall make distributions on such Claim on

14  the applicable Distribution Date.  To the extent that any distribution was not made because such

15  Claim was a Disputed Claim and not yet Allowed, the Reorganized Debtor shall make such

16  distribution at the same time as the next distribution, such that such Creditor will have received

17  all distributions it would have otherwise received if its Claim was Allowed on the Effective Date.

18  **5.9**  **Disputed Distributions**.  If any dispute arises as to the identity of a holder of

19  an Allowed Claim who is to receive any distribution under this Plan, the Reorganized Debtor

20  shall not make any distributions on account of such Claim, but shall reserve funds for such

21  distributions until the identity of the holder is determined by order of the Bankruptcy Court or by

22  written agreement among the interested parties to such dispute.

23  **5.10**  **Limitations on Filing or Amending Claims After the Confirmation Date**.

24  Except as otherwise provided in the Plan, after the Confirmation Date, a proof of claim may be

25  amended by the holder of such Claim solely to decrease, but not to increase, the amount of such

26  Claim.  Except as otherwise provided in this Plan and in the immediately preceding sentence,

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

any proof of claim (whether Filed to assert a new Claim or to amend a previously Filed proof of claim) Filed after the Confirmation Date is deemed disallowed in full and expunged without any action by the Reorganized Debtor.

**ARTICLE 6**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1      General Assumption of Executory Contracts and Unexpired Leases**.  All executory contracts and unexpired leases designated on **Exhibit 2** to the Plan as assumed are assumed as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to reject has been filed with the Bankruptcy Court before the Confirmation Date.

**6.2      Rejection of Executory Contracts and Unexpired Leases**.  All executory contracts and unexpired leases either (i) designated on **Exhibit 2** to the Plan as rejected, or (ii) existing but not listed on Exhibit 2 to the Plan, are rejected as of the Effective Date, except for any executory contract or unexpired lease that has been assumed or rejected in accordance with a Final Order entered on or before the Confirmation Date.

**6.3      Cure of Assumed Contracts and Leases**.  On the Effective Date or as soon after as is feasible, the Debtor must Cure any defaults under any executory contract or unexpired lease assumed under the Plan.  Any monetary Cure required for the assumption of a particular contract or lease is indicated on Exhibit 2 to the Plan.  Any non-Debtor party to any such contract or lease that disputes the amount of Cure indicated on Exhibit 2 to the Plan must file a written objection with the Bankruptcy Court no later than the deadline for objecting to confirmation of the Plan.  Any such objections not raised in that manner are waived.  The Debtor will not, and need not, as a condition to assuming any executory contract or unexpired lease under the Plan, Cure any default that need not be cured under Bankruptcy Code § 365(b).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1     **6.4**        **Rejection Claims Bar Date**.  All Rejection Claims must be filed on or before

2 the thirtieth Business Day following the Confirmation Date; and any Rejection Claim filed after

3 such date is forever barred.  All Rejection Claims are Class 2 Unsecured Claims under the Plan.

4 With respect to any executory contract or unexpired lease rejected by the Debtor before the

5 Confirmation Date, the deadline for filing a Rejection Claim remains the deadline set forth in the

6 order of the Bankruptcy Court authorizing that rejection.  If the order did not contain such a

7 deadline, the deadline for filing a Rejection Claim is the thirtieth Business Day following the

8 Confirmation Date.

9                                   **ARTICLE 7**
**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

10

11     **7.1**        **Conditions Precedent to the Effective Date**.  The following are conditions

12 precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in

13 accordance with section 7.2 of the Plan:

14     **7.1.1**     **Confirmation**.  The Bankruptcy Court has entered the Confirmation

15 Order, in form and substance reasonably satisfactory to the Debtor.  The Confirmation Order

16 must: (i) find that this Plan complies with all applicable requirements of the Bankruptcy Code,

17 (ii) decree that the Confirmation Order supersedes any Court orders issued prior to the

18 Confirmation Date that may be inconsistent therewith, (iii) decree that, except as otherwise

19 provided in this Plan or in the Confirmation Order, all transfers of property contemplated under

20 this Plan are free and clear of all Claims, security interests, liens, encumbrances and other

21 interests of holders of Claims and Equity Interests, and (iv) provide that any and all executory

22 contracts and unexpired leases that are assumed pursuant to this Plan shall remain in full force

23 and effect for the benefit of the Reorganized Debtor, in each case, notwithstanding any provision

24 in any such contract or lease or in applicable law (including those described in sections 365(b)(2)

25 and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or that

26 enables or requires termination or modification of such contract or lease; and (v) authorize the

PAGE  17-  FIRST AMENDED PLAN OF REORGANIZATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

1 Debtor to take all actions necessary or appropriate to enter into, implement and consummate the

2 contracts, instruments, releases, leases, indentures and other agreements or documents created in

3 connection with this Plan.

4        **7.1.2**   **No Stay**.  No stay of the Confirmation Order is in effect at the time the

5 other conditions set forth in this section 7.1 have been satisfied or waived.

6        **7.1.3**   **Collateral Documents**.  All documents, instruments and agreements, each

7 in form and substance satisfactory to the Debtor, provided for under or necessary to implement

8 this Plan, have been executed and delivered by the parties thereto, unless such execution or

9 delivery has been waived by the party to be benefited thereby.

10    **7.2**     **Waiver of Conditions**.  The Debtor may waive any of the conditions to the

11 effectiveness of this Plan set forth in section 7.1 hereof.

12    **7.3**     **Notice of Effective Date**.  On the first Business Day after the Confirmation

13 Date on which all conditions to effectiveness of this Plan are satisfied or waived, or as soon

14 thereafter as is reasonably practicable, the Reorganized Debtor shall file with the Bankruptcy

15 Court a notice that states the date on which the Effective Date occurred.  This Plan is to be

16 deemed to be effective as of 12:01 a.m. (prevailing Pacific Time) on the Effective Date set forth

17 in such notice Filed with the Bankruptcy Court.

18 **ARTICLE 8**
**EFFECT OF CONFIRMATION**

19    **8.1**     **Effect of Appeals**.  Notwithstanding the pendency of an appeal from the

20 Confirmation Order or the timely service and filing of a motion under Bankruptcy Rules 7052,

21 8002(b), 8002(c), 8003, 8015, 9023 or 9024, the Debtor may, but is not be required to,

22 consummate this Plan, unless the Confirmation Order is stayed pending appeal.

23    **8.2**     **Binding Effect**.  On the Effective Date, pursuant to section 1141(a) of the

24 Bankruptcy Code, the provisions of this Plan are binding upon the Debtor, the Reorganized

25

26

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

1  Debtor, all Creditors and all holders of Equity Interests, including each of their respective heirs,

2  legal representatives, successors and assigns, whether or not they accept this Plan.

3  **8.3  Revesting of Property**.  Except as otherwise provided in the Plan or in the

4  Confirmation Order, on the Effective Date, pursuant to sections 1123(a)(5) and 1141 of the

5  Bankruptcy Code, all property of the Estate will vest in the Reorganized Debtor, free and clear of

6  all liens, Claims, charges, encumbrances, and other interests of Creditors and holders of Equity

7  Interests.  As of the Effective Date, the Reorganized Debtor may use and dispose and otherwise

8  deal with such property and may conduct its affairs, in each case, without supervision of the

9  Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code or the

10  Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the

11  Confirmation Order.

12  **8.4  Discharge**.  Except as otherwise provided in the Plan or in the Confirmation

13  Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Debtor

14  and the Reorganized Debtor, and each of them, are discharged from all liability on any and all

15  Claims that arose before the Confirmation Date; provided, however, that that to the extent that

16  the GIDI Unsecured Claim or the Ivory Unsecured Claim do not receive full payment prior to the

17  eighty-fourth month following the Effective Date, such Claims shall not be so discharged.  This

18  discharge is effective on the Effective Date as to each such Claim, regardless whether: (i) a proof

19  of claim is filed or deemed filed; (ii) the Claim is an Allowed Claim under the Plan; or, (iii) the

20  holder of the Claim votes to accept or reject the Plan.

21  **8.5  Term of Injunction or Stays**.  Unless otherwise provided herein, any

22  injunction or stay arising under or entered during the Bankruptcy Case under sections 105 or 362

23  of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain

24  in full force and effect until the Effective Date.

25  **8.6  Effect on Insurance Policies**.  Except as otherwise provided in the next

26  sentence, and notwithstanding anything to the contrary contained elsewhere in the Plan

PAGE  19-  FIRST AMENDED PLAN OF REORGANIZATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

(including any provision herein that purports to be preemptory or supervening,) the respective

rights, obligations and defenses of the insured and insurer under each insurance policy issued to

the Debtor or under the agreements related to such policies shall be unaffected by this Plan.  Any

and all Claims of the insurers based on policies issued before the Petition Date, whether such

Claims arise under the policy documents or otherwise, shall be discharged under section 8.4

herein, and be classified as Class 2 Claims under the Plan.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

**9.1    Withdrawal or Revocation**.  The Debtor reserves the right to revoke or

withdraw the Plan prior to the Confirmation Date.  If the Plan is revoked or withdrawn, or if the

Confirmation Date does not occur, the Plan has no force and effect and in such event nothing

contained herein will be deemed to constitute a waiver or release of any Claims by or against the

Estate or any other entity, or to prejudice in any other manner the rights of the Debtor, the Estate,

or any other entity in further proceedings involving the Debtor and specifically will not modify

or affect the rights of any party under any prior orders of the Bankruptcy Court.

**9.2    Modifications**.  The Debtor reserves the right to alter, amend, or modify the

Plan prior to the entry of the Confirmation Order.  After entry of the Confirmation Order

(whether or not the Plan has been substantially consummated), upon order of the Bankruptcy

Court after notice and a hearing, the Debtor or Reorganized Debtor, as the case may be, may

alter, amend, or modify the Plan, in accordance with the provisions of section 1127(b) of the

Bankruptcy Code, or may remedy any defect or omission or reconcile any inconsistency in the

Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes

and intent of this Plan so long as the interests of claimants are not materially and adversely

affected.

**9.3    Retention of Jurisdiction**.  The Bankruptcy Court will retain jurisdiction

over all matters arising out of or related to the Bankruptcy Case and this Plan pursuant to

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

sections 105(a) and 1142 of the Bankruptcy Code until the Effective Date.  From and after the

Effective Date, until this Plan has been fully administered, including after the closing of the

Bankruptcy Case by the Bankruptcy Court pursuant to section 350(a) of the Bankruptcy Code

and Bankruptcy Rule 3022, the Bankruptcy Court will retain and have jurisdiction over the

Debtor, the Estate, the Reorganized Debtor, and the Bankruptcy Case for the purposes of

determining all matters presented by or arising under this Plan, including, without limitation,

jurisdiction to:

(a)     enforce and administer the provisions of this Plan, including taking any

action to enforce this Plan, and issue such orders as may be necessary for the implementation,

execution and consummation of this Plan and the determination of any and all disputes arising

under or in connection with this Plan;

(b)     determine the allowance or classification of Claims and determine any

objections or disputes thereto;

(c)     determine any and all applications, motions, adversary proceedings, and

contested matters pending before the Bankruptcy Court as of the Effective Date or arising in or

related to the Bankruptcy Case or this Plan;

(d)     determine any and all Fee Claims incurred in this Bankruptcy Case;

(e)     determine any other request for payment of Administrative Claims;

(f)     correct any defect, cure any omission or reconcile any inconsistency in

this Plan or the Confirmation Order as may be necessary to carry out the provisions, purposes

and intent of this Plan;

(g)     approve and confirm any modification of this Plan;

(h)     enter and implement such orders as may be appropriate if the

Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(i)     consider the compromise and settlement of any Claim against the Debtor

or the Estate;

PAGE  21-  FIRST AMENDED PLAN OF REORGANIZATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1                  (j)        determine such other matters as may be provided for in the Confirmation

2 Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or

3 any other applicable law;

                  (k)       enforce all orders, judgments, injunctions, releases, exculpations,

5 indemnifications, and rulings entered in connection with the Bankruptcy Case;

                  (l)        enforce, interpret and administer the provisions of this Plan, including, but

7 not limited to, the provisions relating to the distributions to be made hereunder and to the transfer

8 of any property hereunder;

                  (m)     determine matters concerning federal, state or local taxes in accordance

10 with sections 346, 505 and 1146 of the Bankruptcy Code;

                  (n)       issue and enter such orders, consistent with sections 1142 and 105(a) of

12 the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete

13 implementation of this Plan; and

                  (o)       enter a final decree closing the Bankruptcy Case.

**9.4     Election Pursuant to Section 1129(b) of the Bankruptcy Code**.  The Debtor

16 hereby requests confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code if

17 the requirements of all provisions of section 1129(a) of the Bankruptcy Code, except

18 paragraph (a)(8) thereof, are met with regard to this Plan.  In determining whether the

19 requirements of section 1129(a)(8) of the Bankruptcy Code have been met, any Class that does

20 not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under

21 Bankruptcy Rule 3018 as of the date fixed by the Bankruptcy Court for filing acceptances or

22 rejections of this Plan will be deemed deleted from this Plan for purposes of voting to accept or

23 reject this Plan and for purposes of determining acceptance or rejection of this Plan by such

24 Class.

**9.5     Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the

26 Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance,

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

1    or in connection with this Plan, whether occurring prior or subsequent to the Confirmation Date,

2    including any deeds, bills of sale or assignments executed in connection with any disposition of

3    assets contemplated by this Plan, is not be subject to any stamp tax, real estate transfer tax,

4    excise tax, sales tax, use tax or other similar tax.

5    **9.6**    **Waivers**.  Except as otherwise provided in this Plan or in the Confirmation

6    Order, any term of this Plan may be waived by the party benefited by the term to be waived.

7    **9.7**    **Setoffs, Recoupments and Defenses**.  Nothing contained in this Plan shall

8    constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or

9    recoupment, or of any defense, they may have with respect to any Claim (including, without

10    limitation, rights under section 502(d) of the Bankruptcy Code).  Except as otherwise provided in

11    this Plan, in the Confirmation Order or in agreements previously approved by a Final Order, the

12    Reorganized Debtor may, but are not required to, set off against any Claim or any distributions

13    with respect to such Claim any and all of the claims, rights and Causes of Action of any nature

14    that the Debtor or the Reorganized Debtor, as applicable, may hold against the holder of such

15    Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any

16    Claim, the payment of any distribution hereunder or any other action or omission of the Debtor

17    or the Reorganized Debtor, as applicable, nor any provision of this Plan, constitutes a waiver or

18    release by the Debtor or the Reorganized Debtor, as applicable, of any such claims, rights and

19    Causes of Action that the Debtor or the Reorganized Debtor, as applicable, may possess against

20    such holder.

21    **9.8**    **Cancellation of Documents Evidencing Unsecured Claims**.  As of the

22    Effective Date, any note, agreement, instrument or other document evidencing an Unsecured

23    Claim in an impaired Class shall be deemed cancelled, null and void, except for the right, if any,

24    to receive distributions under this Plan; provided, however, that this section 9.9 shall not apply to

25    the GIDI Unsecured Claim and the Ivory Unsecured Claim and the documents supporting such

26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

1  Claims to the extent that such Claims do not receive full payment prior to the eighty-fourth

2  month following the Effective Date.

3  **9.9  No Retiree Benefits**.  The Debtor is not obligated to provide retiree benefits

4  within the meaning of section 1114(a) of the Bankruptcy Code.  Thus, section 1129(a)(13) of the

5  Bankruptcy Code does not apply to this Plan.

6  **9.10  Closing of the Bankruptcy Case**.  As soon as practicable after the Effective

7  Date, when the Reorganized Debtor deems appropriate, it shall seek authority from the

8  Bankruptcy Court to close the Bankruptcy Case in accordance with the Bankruptcy Code and the

9  Bankruptcy Rules; *provided, however*, that entry of a final decree closing the Bankruptcy Case

10  shall, whether or not specified therein, be without prejudice to the right of the Reorganized

11  Debtor or other party in interest to reopen the Bankruptcy Case for any matter over which the

12  Bankruptcy Court has retained jurisdiction under this Plan.

13  **9.11  Compromise of Controversies**.  Pursuant to Bankruptcy Rule 9019, and in

14  consideration for the classification, distributions and other benefits provided under this Plan, the

15  provisions of this Plan constitute a good faith compromise and settlement of all Claims or

16  controversies resolved pursuant to this Plan.  The entry of the Confirmation Order shall

17  constitute the Bankruptcy Court's approval of each of the compromises and determination that

18  such compromises and settlements are in the best interest of the Debtor and the Estate.  The

19  Debtor expressly reserves the right (with Court approval, following appropriate notice and

20  opportunity for a hearing) to compromise and settle other Claims and Causes of Action up to and

21  including the Effective Date.

22  **9.12  Payment of Statutory Fees**.  The Reorganized Debtor will be responsible for

23  timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is

24  closed, converted, or dismissed.  After Confirmation, the Reorganized Debtor shall file a

25  monthly financial report for each month, or portion thereof, that the Bankruptcy Case remains

26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

1  open.  The monthly financial report will include a statement of all disbursements made during

2  the course of the month by the Reorganized Debtor, whether or not pursuant to this Plan.

3  **9.13    Notices to Reorganized Debtor**.  All notices, requests, demands or other

4  communications in connection with or required to be given under this Plan, if any, will be in

5  writing and will be sent by: (i) certified first class mail, return receipt requested, postage prepaid

6  (deemed given when received as noted on return receipt); (ii) overnight courier, freight prepaid,

7  receipt requested (deemed given when received as noted on receipt); (iii) facsimile (deemed

8  given when received as noted on confirmation report); or (iv) hand delivery, receipt requested

9  (deemed given when received as noted on receipt):

10     If to the Reorganized Debtor, to:     Ivory Trading Company
                                            539 SE Division Place
11                                          Portland, OR 97202
                                            Phone: (971) 244-4202
12                                          Fax: (971) 244-4221
                                            Attn: Michael P. Ivory
13
       With a copy to:                       Perkins Coie LLP
14                                          1120 N.W. Couch Street, 10th Floor
                                            Portland, OR  97209-4128
15                                          Phone:  (503) 727-2000
                                            Fax:  (503) 727-2222
16                                          Attn: Douglas R. Pahl

17  Either of the above parties may, from time to time, change its address for future notices and other

18  communications hereunder by filing a notice of the change of address with the Bankruptcy

19  Court.

20     **9.14    Default**.  Except as otherwise provided in the Plan or in the Confirmation

21  Order, in the event that the Reorganized Debtor defaults in the performance of any of its

22  obligations under the Plan and has not cured such a default within any applicable cure period (or,

23  if no cure period is specified under the Plan, then within 30 days after receipt of written notice of

24  default from the Creditor to whom performance is due), then the entity to whom the performance

25  is due may pursue such remedies as are available at law or in equity.  An event of default

26  occurring with respect to one Claim is not an event of default with respect to any other Claim.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

117387-0001/LEGAL125928981.3

**9.15     Headings**.  The headings of the articles, sections and subsections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

**9.16     Governing Law**.  Except to the extent that the Bankruptcy Code is applicable and preempts state law, the rights and obligations arising under this Plan will be governed by, and will be construed and enforced in accordance with, the laws of the State of Oregon without regard to choice of law rules.

**9.17     Computation of Time Periods**.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) will apply.

**9.18     Successors and Assigns**.  The Plan is binding upon and inures to the benefit of the Debtor, the Reorganized Debtor, Creditors, holders of Equity Interests, and all other parties in interest affected thereby and their respective successors, heirs, legal representatives, and assigns.

**9.19     Exhibits and Schedules**.  All exhibits and schedules to this Plan are incorporated into and are part of this Plan as if set forth in full herein.

WHEREFORE, the Debtor requests entry of an order granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

DATED:  July 16, 2015                    **PERKINS COIE** LLP


By: /s/ Douglas R. Pahl
  Douglas R. Pahl, OSB No. 950476
  DPahl@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Debtor
Ivory Trading Company, Inc.

PAGE  26-   FIRST AMENDED PLAN OF REORGANIZATION

117387-0001/LEGAL125928981.3

**EXHIBIT 1**

**Loan Modification**

***(to be provided)***

**EXHIBIT 2**

**Executory Contracts and Unexpired Leases**

| Non-Debtor Party | Contract Description | Treatment | Cure Amount |
|---|---|---|---|
| Division Place Properties | Commercial lease | Assume; pay cure over 60 months | $74,716.83 |

117387-0001/LEGAL125928981.3

# EXHIBIT B

## Income Statement

EXHIBIT B

# Ivory Trading Co Inc.
# Balance Sheet
## As of December 31, 2014

|  | Dec 31, 14 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1010 · Bank of the West Checking | -4,504.51 |
| **Total Checking/Savings** | -4,504.51 |
| | |
| **Accounts Receivable** | |
| 1201 · Accounts Receivable | 92,071.48 |
| **Total Accounts Receivable** | 92,071.48 |
| | |
| **Other Current Assets** | |
| 1115 · Loan - MPI | -5,350.00 |
| 1121 · Headwear - Inventory Asset | 390,728.51 |
| 1125 · Inventory - Overhead Accruals | 106,548.04 |
| 1198 · Prepaid Expenses/Cargo Insuranc | 3,000.03 |
| 1200 · Prepaid Expenses/Loan Fees | 4,442.20 |
| 1210 · Deposits | 18,291.30 |
| **Total Other Current Assets** | 517,660.08 |
| **Total Current Assets** | 605,227.05 |
| | |
| **Fixed Assets** | |
| **1400 · Fixed Assets** | |
| 1410 · Furniture & Fixtures | 96,610.48 |
| 1415 · Cmputer, Phone Equip & Machines | 318,275.56 |
| 1420 · Leasehold Improvements | 18,307.45 |
| 1490 · Accumulated Depreciation | -424,696.96 |
| **Total 1400 · Fixed Assets** | 8,496.53 |
| **Total Fixed Assets** | 8,496.53 |
| | |
| **Other Assets** | |
| **1500 · Start-Up Costs** | |
| 1550 · Z-Accumulated Amortization | -4,121.00 |
| 1500 · Start-Up Costs - Other | 4,120.99 |
| **Total 1500 · Start-Up Costs** | -0.01 |
| **Total Other Assets** | -0.01 |
| | |
| **TOTAL ASSETS** | 613,723.57 |
| | |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| 2000 · Accounts Payable | 415,973.42 |
| **Total Accounts Payable** | 415,973.42 |
| | |
| **Credit Cards** | |
| 2010 · American Express | 1,827.28 |
| **Total Credit Cards** | 1,827.28 |
| | |
| **Other Current Liabilities** | |
| **2050 · Line of Credit - BOW 00-0004-2** | |
| 2051 · Credit Card Loan | 17,700.00 |
| 2052 · Deposits | 28,328.10 |
| 2050 · Line of Credit - BOW 00-0004-2 - Other | 526,018.97 |
| **Total 2050 · Line of Credit - BOW 00-0004-2** | 572,047.07 |

Case 15-32026-pcm11     Doc 80-1     Filed 07/20/15

# Ivory Trading Co Inc.
## Balance Sheet
### As of December 31, 2014

|  | Dec 31, 14 |
|---|---:|
| **2100 · Payroll Liabilities** | 3,467.76 |
| **Total Other Current Liabilities** | 575,514.83 |
| **Total Current Liabilities** | 993,315.53 |
| **Long Term Liabilities** | |
| **2070 · Loan - GIDI** | 61,693.90 |
| **Total Long Term Liabilities** | 61,693.90 |
| **Total Liabilities** | 1,055,009.43 |
| **Equity** | |
| **3500 · Owner's Equity** | 463,024.14 |
| **3600 · Owner's Contributions/Draws** | -61,512.75 |
| **3900 · Retained Earnings** | -870,354.17 |
| **Net Income** | 27,556.92 |
| **Total Equity** | -441,285.86 |
| **TOTAL LIABILITIES & EQUITY** | 613,723.57 |

Exhibit B

Page 2 of 8

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

# Ivory Trading Co Inc.
## Profit & Loss
### January through December 2014

|  | Jan - Dec 14 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| 4010 · Sales | 241,636.22 |
| 4030 · Sales Discounts | |
| H-4031 · Headwear - Sales Discounts | -7,610.27 |
| | |
| Total 4030 · Sales Discounts | -7,610.27 |
| | |
| H-4015 · Headwear - Sales Blank Caps | |
| H-4017 · Sales- Embroidery & Set Up Fee | 198,003.18 |
| H-4018 · Sales - Special Order Off Shore | 620,965.41 |
| H-4015 · Headwear - Sales Blank Caps - Other | 262,323.26 |
| | |
| Total H-4015 · Headwear - Sales Blank Caps | 1,081,291.85 |
| | |
| H-4019 · T-Shirt | 591.30 |
| H-4020 · Headwear - Freight Income | 54,380.10 |
| H-4023 · Artwork Services - In house | 204.75 |
| H-4121 · Ball Markers | 500.00 |
| | |
| **Total Income** | 1,370,993.95 |
| | |
| **Cost of Goods Sold** | |
| 5000 · Cost of Goods Sold | |
| 5100 · Material Costs | 639.00 |
| | |
| 5105 · Freight | 4.14 |
| 5115 · Brokerage Fees | 1,353.03 |
| 5135 · Marine Insurance | 1,987.50 |
| H-5101 · Headwear - Material Costs | |
| H-5104 · Headwear - Inventory Adjustment | 1,036.37 |
| H-5101 · Headwear - Material Costs - Other | 449,984.24 |
| | |
| Total H-5101 · Headwear - Material Costs | 451,020.61 |
| | |
| H-5102 · T-Shirts | 115.84 |
| H-5103 · Ballmarkers | 400.12 |
| H-5106 · Headwear-Blank Cap Import Frt | |
| H-5107 · Headwear - Freight-samples/misc | 6,884.85 |
| H-5108 · Headwear - Import frt-ocean/air | 59,086.70 |
| H-5109 · Headwear-Courier/Frt to Custmr | 29,678.85 |
| H-5106 · Headwear-Blank Cap Import Frt - Other | 16,496.71 |
| | |
| Total H-5106 · Headwear-Blank Cap Import Frt | 112,147.11 |
| | |
| H-5111 · Headwear - Duty | 35,839.40 |
| H-5116 · Headwear - Brokerage Fees | 7,414.60 |
| H-5121 · Headwear - Agent Commission | 11,579.74 |
| | |
| H-5125 · Steaming, Folding, Bagging | -527.50 |
| H-5126 · Headwear - Outsource Embroidery | 1,147.20 |
| H-5127 · Screenprinting | 716.71 |
| H-5128 · Headwear-Design Set Up/Digitize | 14.31 |
| H-5136 · Headwear - Marine Insurance | 1,987.50 |
| H-5141 · Headwear - Storage | 90.00 |
| | |
| Total 5000 · Cost of Goods Sold | 625,929.31 |
| | |
| **Total COGS** | 625,929.31 |
| | |
| **Gross Profit** | 745,064.64 |
| | |
| **Expense** | |
| 6110 · Automobile Expense | 9,554.70 |
| 6115 · Auto Insurance | 2,001.46 |
| 6120 · Bank Service Charges | |
| H-6121 · Headwear - Bank Service Charges | 1,818.49 |
| 6120 · Bank Service Charges - Other | 803.01 |

Exhibit B

# Ivory Trading Co Inc.
# Profit & Loss
### January through December 2014

|  | Jan - Dec 14 |
|---|---|
| **Total 6120 · Bank Service Charges** | 2,621.50 |
| **6125 · Credit Card Service Fee** | |
|     **H-6126 · Headwear - Credit Card Service** | 9,167.84 |
|     **6125 · Credit Card Service Fee - Other** | 1,646.56 |
| **Total 6125 · Credit Card Service Fee** | 10,814.40 |
| **6140 · Contributions** | 85.90 |
| **6150 · Depreciation Expense** | 28,575.00 |
| **6160 · Dues and Subscriptions** | 1,984.04 |
| **6180 · Insurance** | |
|     **6182 · Worker's Compensation** | -228.91 |
|     **6185 · Liability Insurance** | 6,628.10 |
|     **6190 · Disability Insurance** | 1,333.68 |
|     **6192 · Life Insurance** | 2,593.56 |
|     **6195 · Owner medical and dental** | 18,562.33 |
|     **6196 · Employee Medical & Dental** | 2,953.97 |
|     **H-6197 · Headwear - Emplye Med/Dental** | 40,030.13 |
| **Total 6180 · Insurance** | 71,872.86 |
| **6200 · Interest Expense** | 24,584.26 |
| **6230 · Licenses and Permits** | 144.98 |
| **6240 · Miscellaneous** | 248.60 |
| **6250 · Postage and Delivery** | 933.55 |
| **6262 · Advertising** | 0.00 |
| **6263 · Promotional Expense** | 887.20 |
| **6270 · Professional Fees** | |
|     **6280 · Legal Fees** | 204.90 |
|     **6650 · Accounting** | 4,097.54 |
|     **H-6651 · Headwear - Accounting** | 362.54 |
|     **6270 · Professional Fees - Other** | 128.69 |
| **Total 6270 · Professional Fees** | 4,793.67 |
| **6290 · Rent** | 21,518.70 |
| **6300 · Repairs** | 459.80 |
| **6320 · Janitorial services** | |
|     **H-6321 · Headwear - Janitorial services** | 1,203.00 |
|     **6320 · Janitorial services - Other** | -314.15 |
| **Total 6320 · Janitorial services** | 888.85 |
| **6325 · Garbage/Sanitary Services** | |
|     **H-6326 · Headwear - Garbage/Sanitary Ser** | 853.11 |
|     **6325 · Garbage/Sanitary Services - Other** | 677.09 |
| **Total 6325 · Garbage/Sanitary Services** | 1,530.20 |
| **6340 · Telephone** | 4,467.70 |
| **6350 · Travel & Ent** | |
|     **6360 · Entertainment** | 16,466.71 |
|     **6370 · Meals** | 2,659.50 |
|     **6380 · Travel** | 6,249.91 |
|     **H-6361 · Headwear - Entertainment** | 9.83 |
|     **H-6371 · Headwear - Meals** | 1,498.87 |
|     **H-6380 · Headwear - Travel** | 8,999.37 |
|     **6350 · Travel & Ent - Other** | 4.25 |
| **Total 6350 · Travel & Ent** | 35,888.44 |
| **6385 · Parking** | 315.00 |
| **6390 · Utilities** | |
|     **H-6391 · Headwear - Utilities** | 9,428.91 |
|     **6390 · Utilities - Other** | 2,707.53 |
| **Total 6390 · Utilities** | 12,136.44 |
| **6540 · IT Support** | |

# Ivory Trading Co Inc.
## Profit & Loss
### January through December 2014

|  | Jan - Dec 14 |
|---|---|
| H-6541 · Headwear - IT Support | 11,300.27 |
| 6540 · IT Support - Other | 6,520.21 |
| **Total 6540 · IT Support** | **17,820.48** |
| 6551 · Contract Labor Expense | 148.00 |
| 6560 · Payroll Expenses |  |
| 6570 · Payroll Executives | 0.00 |
| 6575 · Payroll - Office | 14,643.40 |
| 6585 · State Child Support Deduct | 0.00 |
| H-6561 · Headwear - Payroll Expense | 59,723.80 |
| H-6576 · Headwear - Payroll - Office | 180,717.69 |
| H-6581 · Headwear - Employee Draws | 35,885.00 |
| 6560 · Payroll Expenses - Other | 5,941.82 |
| **Total 6560 · Payroll Expenses** | **296,911.71** |
| 6600 · Payroll Tax Expense |  |
| 6610 · FICA | 1,518.94 |
| 6620 · FUTA | 52.50 |
| 6630 · Oregon Unemployment | 708.52 |
| 6640 · Tri-Met | 143.80 |
| 6660 · Worker, OR-CIT | 15.35 |
| H-6611 · Headwear - FICA | 20,875.20 |
| H-6621 · Headwear - FUTA | 427.02 |
| H-6631 · Headwear - OR Unemployment | 9,561.60 |
| H-6641 · Headwear - Tri-Met | 1,972.99 |
| H-6661 · Headwear - Worker, OR - CIT | 241.26 |
| **Total 6600 · Payroll Tax Expense** | **35,517.18** |
| 6770 · Supplies |  |
| 6780 · Office | 2,310.01 |
| 6785 · Software | 79.99 |
| H-6781 · Headwear - Office Supplies | 6,903.09 |
| H-6791 · Headwear - Shipping | 1,721.70 |
| H-6795 · Embroidery | 12,031.93 |
| **Total 6770 · Supplies** | **23,046.72** |
| 6820 · Taxes |  |
| 6840 · Local | 268.00 |
| 6860 · State | 319.99 |
| **Total 6820 · Taxes** | **587.99** |
| H-6111 · Headwear - Automobile Expense | 2,256.38 |
| H-6136 · Headwear - Catalog Expense | 69.00 |
| H-6161 · Headwear - Dues & Subscriptions | 99.00 |
| H-6201 · Headwear - Interest Expense | 10,825.84 |
| H-6251 · Headwear - Postage & Delivery | 999.10 |
| H-6259 · Headwear -Printing/Reproduction | 540.30 |
| H-6261 · Headwear - Advertising | 4,566.50 |
| H-6264 · Headwear - Promotional Expense | 6,152.64 |
| H-6268 · Headwear - Advertise /Marketing | 1,905.96 |
| H-6291 · Headwear - Rent Expense | 47,518.70 |
| H-6301 · Headwear - Repairs Expense | 134.50 |
| H-6341 · Headwear - Telephone Expense | 4,391.43 |
| H-6386 · Headwear - Parking Expense | 384.00 |
| H-6550 · Headwear - Contract Labor | 15,223.73 |
| **Total Expense** | **705,406.41** |
| **Net Ordinary Income** | **39,658.23** |
| **Net Income** | **39,658.23** |

# Ivory Trading Co Inc.
## Profit & Loss
### January through May 2015

|  | Jan - May 15 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **4010 · Sales** | 204,680.59 |
| **4030 · Sales Discounts** | |
| H-4031 · Headwear - Sales Discounts | -1,041.91 |
| **Total 4030 · Sales Discounts** | -1,041.91 |
| **H-4015 · Headwear - Sales Blank Caps** | |
| H-4017 · Sales- Embroidery & Set Up Fee | 91,838.35 |
| H-4018 · Sales - Special Order Off Shore | 313,011.61 |
| H-4015 · Headwear - Sales Blank Caps - Other | 97,349.68 |
| **Total H-4015 · Headwear - Sales Blank Caps** | 502,199.64 |
| **H-4019 · T-Shirt** | 137.83 |
| **H-4020 · Headwear - Freight Income** | 25,627.32 |
| **H-4023 · Artwork Services - In house** | 25.00 |
| **H-4121 · Ball Markers** | 750.00 |
| **Total Income** | 732,378.47 |
| **Cost of Goods Sold** | |
| **5000 · Cost of Goods Sold** | |
| 5100 · Material Costs | -759.05 |
| 5135 · Marine Insurance | 475.00 |
| H-5101 · Headwear - Material Costs | |
| H-5104 · Headwear - Inventory Adjustment | -617.12 |
| H-5101 · Headwear - Material Costs - Other | 197,501.16 |
| **Total H-5101 · Headwear - Material Costs** | 196,884.04 |
| H-5102 · T-Shirts | 65.15 |
| H-5103 · Ballmarkers | 579.89 |
| H-5106 · Headwear-Blank Cap Import Frt | |
| H-5107 · Headwear - Freight-samples/misc | 1,078.13 |
| H-5108 · Headwear - Import frt-ocean/air | 22,695.78 |
| H-5109 · Headwear-Courier/Frt to Custmr | 15,710.77 |
| H-5106 · Headwear-Blank Cap Import Frt - Other | 5,673.82 |
| **Total H-5106 · Headwear-Blank Cap Import Frt** | 45,158.50 |
| H-5111 · Headwear - Duty | 17,085.70 |
| H-5116 · Headwear - Brokerage Fees | 2,510.29 |
| H-5121 · Headwear - Agent Commission | 1,868.99 |
| H-5125 · Steaming, Folding, Bagging | -361.75 |
| H-5127 · Screenprinting | 137.83 |
| H-5136 · Headwear - Marine Insurance | 475.00 |
| **Total 5000 · Cost of Goods Sold** | 264,119.59 |
| **Total COGS** | 264,119.59 |
| **Gross Profit** | 468,258.88 |
| **Expense** | |
| 6110 · Automobile Expense | 3,601.91 |
| 6115 · Auto Insurance | 1,372.85 |
| 6120 · Bank Service Charges | |
| H-6121 · Headwear - Bank Service Charges | 1,085.74 |
| 6120 · Bank Service Charges - Other | 563.72 |
| **Total 6120 · Bank Service Charges** | 1,649.46 |

# Ivory Trading Co Inc.
# Profit & Loss
### January through May 2015

|  | Jan - May 15 |
|---|---|
| **6125 · Credit Card Service Fee** | |
| H-6126 · Headwear - Credit Card Service | 2,276.65 |
| 6125 · Credit Card Service Fee - Other | 780.04 |
| **Total 6125 · Credit Card Service Fee** | 3,056.69 |
| **6140 · Contributions** | 150.00 |
| **6150 · Depreciation Expense** | 9,525.00 |
| **6160 · Dues and Subscriptions** | 952.90 |
| **6180 · Insurance** | |
| 6185 · Liability Insurance | 2,496.96 |
| 6190 · Disability Insurance | 544.00 |
| 6192 · Life Insurance | 1,080.65 |
| 6195 · Owner medical and dental | 7,139.43 |
| 6196 · Employee Medical & Dental | 1,923.48 |
| H-6197 · Headwear - Emplye Med/Dental | 13,751.29 |
| 6180 · Insurance - Other | 47.07 |
| **Total 6180 · Insurance** | 26,982.88 |
| **6200 · Interest Expense** | 7,185.60 |
| **6240 · Miscellaneous** | 48.20 |
| **6250 · Postage and Delivery** | 909.50 |
| **6260 · Printing and Reproduction** | 14.00 |
| **6262 · Advertising** | 0.00 |
| **6263 · Promotional Expense** | 278.49 |
| **6270 · Professional Fees** | |
| 6280 · Legal Fees | 10,000.00 |
| **Total 6270 · Professional Fees** | 10,000.00 |
| **6290 · Rent** | 11,487.50 |
| **6300 · Repairs** | 112.50 |
| **6320 · Janitorial services** | |
| H-6321 · Headwear - Janitorial services | 834.35 |
| 6320 · Janitorial services - Other | 38.75 |
| **Total 6320 · Janitorial services** | 873.10 |
| **6325 · Garbage/Sanitary Services** | |
| H-6326 · Headwear - Garbage/Sanitary Ser | 148.22 |
| 6325 · Garbage/Sanitary Services - Other | 178.36 |
| **Total 6325 · Garbage/Sanitary Services** | 326.58 |
| **6340 · Telephone** | 691.45 |
| **6350 · Travel & Ent** | |
| 6360 · Entertainment | 7,987.87 |
| 6370 · Meals | 1,182.42 |
| 6380 · Travel | 4,592.94 |
| H-6371 · Headwear - Meals | 1,015.08 |
| H-6380 · Headwear - Travel | 1,674.19 |
| **Total 6350 · Travel & Ent** | 16,452.50 |
| **6385 · Parking** | 353.90 |
| **6390 · Utilities** | |
| H-6391 · Headwear - Utilities | 4,633.50 |
| 6390 · Utilities - Other | 1,802.64 |
| **Total 6390 · Utilities** | 6,436.14 |
| **6540 · IT Support** | |
| H-6541 · Headwear - IT Support | 1,451.28 |
| 6540 · IT Support - Other | 1,108.71 |
| **Total 6540 · IT Support** | 2,559.99 |

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

# Ivory Trading Co Inc.
# Profit & Loss
### January through May 2015

|  | Jan - May 15 |
|---|---|
| **6560 · Payroll Expenses** |  |
| 6570 · Payroll Executives | 7,500.00 |
| 6575 · Payroll - Office | 8,650.00 |
| 6585 · State Child Support Deduct | -852.00 |
| H-6561 · Headwear - Payroll Expense | 610.76 |
| H-6576 · Headwear - Payroll - Office | 107,960.29 |
| H-6581 · Headwear - Employee Draws | 11,850.00 |
| 6560 · Payroll Expenses - Other | 446.71 |
| **Total 6560 · Payroll Expenses** | 136,165.76 |
|  |  |
| **6600 · Payroll Tax Expense** |  |
| 6610 · FICA | 650.00 |
| 6620 · FUTA | 20.40 |
| 6630 · Oregon Unemployment | 302.75 |
| 6640 · Tri-Met | 61.48 |
| 6660 · Worker, OR-CIT | 6.35 |
| H-6611 · Headwear - FICA | 9,174.82 |
| H-6621 · Headwear - FUTA | 344.78 |
| H-6631 · Headwear - OR Unemployment | 4,369.51 |
| H-6641 · Headwear - Tri-Met | 867.95 |
| H-6661 · Headwear - Worker, OR - CIT | 99.80 |
| **Total 6600 · Payroll Tax Expense** | 15,897.84 |
|  |  |
| **6770 · Supplies** |  |
| 6780 · Office | 1,040.64 |
| 6785 · Software | 15.02 |
| H-6781 · Headwear - Office Supplies | 2,384.18 |
| H-6791 · Headwear - Shipping | 1,020.54 |
| H-6795 · Embroidery | 6,657.34 |
| **Total 6770 · Supplies** | 11,117.72 |
|  |  |
| H-6111 · Headwear - Automobile Expense | 120.40 |
| H-6136 · Headwear - Catalog Expense | 0.00 |
| H-6161 · Headwear - Dues & Subscriptions | 849.99 |
| H-6201 · Headwear - Interest Expense | 4,093.04 |
| H-6251 · Headwear - Postage & Delivery | 620.43 |
| H-6259 · Headwear -Printing/Reproduction | 375.80 |
| H-6261 · Headwear - Advertising | 1,816.08 |
| H-6264 · Headwear - Promotional Expense | 435.38 |
| H-6268 · Headwear - Advertise /Marketing | 2,493.55 |
| H-6291 · Headwear - Rent Expense | 21,487.50 |
| H-6301 · Headwear - Repairs Expense | 112.50 |
| H-6341 · Headwear - Telephone Expense | 1,697.15 |
| H-6386 · Headwear - Parking Expense | 160.00 |
| H-6550 · Headwear - Contract Labor | 1,288.15 |
| **Total Expense** | 303,752.43 |
|  |  |
| **Net Ordinary Income** | 164,506.45 |
|  |  |
| **Net Income** | **164,506.45** |

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

**EXHIBIT C-1**

**GIDI Payments**

EXHIBIT C-1

117387-0001/LEGAL125928975.4

|                                                  | Payments      | Loans        | Balance      |
| ------------------------------------------------ | ------------- | ------------ | ------------ |
| GIDI Promotions Loan Balance as of 5/7/14        |               |              | $134,200.00  |
| 5/8/14 payment to GIDI                           | -$65,500.00   |              |              |
|                                                  |               |              | $68,700.00   |
| 8/15/14 payment to GIDI                          | -$7,000.00    |              |              |
|                                                  |               |              | $61,700.00   |
| 9/29/14 Loan from GIDI                           |               | $19,000.00   |              |
|                                                  |               |              | $80,700.00   |
| 10/13/14 payment to GIDI                         | -$19,000.00   |              |              |
|                                                  |               |              | $61,700.00   |
| 1/16/15 payment to GIDI                          | -$20,000.00   |              |              |
|                                                  |               |              | $41,700.00   |
| 3/30/15 Loan from GIDI                           |               | $10,000.00   |              |
|                                                  |               |              | $51,700.00   |
| 4/06/15 payment to GIDI                          | -$15,000.00   |              |              |
|                                                  |               |              | $36,700.00   |
| GIDI Promotions Loan Balance as of 4/7/15 to current |           |              | $36,700.00   |

Exhibit C-1

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15    Page 1 of 2

| | Type | Date | Num | Name | Memo | Split | Amount |
|---|---|---|---|---|---|---|---|
| **GIDI Loans** | Deposit | 04/29/2014 | 12823 | GIDI Promotions | Deposit - LOAN | 1010 · Bank of the West Checking | 25,000.00 |
| 4/24/14-4/24/15 | Deposit | 09/29/2014 | 13676 | GIDI Promotions | Deposit - LOAN | 1010 · Bank of the West Checking | 19,000.00 |
| | Deposit | 03/30/2015 | 14573 | GIDI Promotions | Deposit - LOAN | 1010 · Bank of the West Checking | 10,000.00 |
| | | | | | | | 54,000.00 |
| | | | | | | | |
| **Loan Repayments** | Bill | 05/08/2014 | May14Loan Payment | GIDI Promotions | May 14 Loan Payment | 2000 · Accounts Payable | -65,500.00 |
| 4/24/14-4/24/15 | Bill | 08/15/2014 | Aug14 | GIDI Promotions | Aug 14 Loan Payment | 2000 · Accounts Payable | -7,000.00 |
| | Bill | 10/13/2014 | Oct14Loan | GIDI Promotions | Oct 14 Loan Payment | 2000 · Accounts Payable | -19,000.00 |
| | Bill | 01/16/2015 | Jan15 Loan Payment | GIDI Promotions | Jan 15 Loan Payment | 2000 · Accounts Payable | -20,000.00 |
| | Bill | 04/06/2015 | April2015 | GIDI Promotions | April 15 Loan Payment | 2000 · Accounts Payable | -15,000.00 |
| | | | | | | | -126,500.00 |

**EXHIBIT C-2**

**GIDI and Ivory Unsecured Claims**

EXHIBIT C-2

117387-0001/LEGAL125928975.4

## GIDI Claim - Loans and Purposes

| Date | Amount | Purpose | Used |
|------|--------|---------|------|
| 7/30/2012 | $25,000.00 | Payroll | Same Day |
| 11/15/2012 | $44,000.00 | Vendor Payable $41195.44 | Same Day |
| | | Product Invoice $9828.80 | Same Day |
| 3/27/2013 | $12,000.00 | Payroll | Same Day |
| 11/1/2013 | $2,000.00 | BOW Loan Payment | Same Day |
| 1/6/2014 | $35,000.00 | Vendor Payables $36134.30 | Same Day |
| 1/30/2014 | $7,000.00 | Payroll | Same Day |
| 2/10/2014 | $60,000.00 | Vendor Payables $20159.07 | 2/11/2014 |
| | | Product Invoice $6046.18 | 2/11/2014 |
| | | Product Invoice $37417.50 | 2/11/2014 |
| 4/29/2014 | $25,000.00 | Payroll | Same Day |
| 9/29/2014 | $19,000.00 | Payroll/BOW Loan Payment | Same Day |
| 3/30/2015 | $10,000.00 | Payroll/BOW Loan Payment | Same Day |

## Michael Ivory Claim - Credit Card Advances and Purposes

| Date | Amount | Purpose | Used |
|------|--------|---------|------|
| 6/26/2013 | $6,868.80 | Chase Card - Payroll/BOW Loan Payment | 6/28/2013 |
| 6/26/2013 | $3,798.00 | Chase Card - BOW Loan Payment | 6/28/2013 |
| 8/27/2013 | $3,000.00 | Chase Card - BOW Loan Payment | Same Day |
| 10/23/2013 | $9,000.00 | Chase Card - Product Invoice $21134.65 | 10/29/2013 |
| 10/29/2013 | $15,000.00 | Amex - Payroll | Same Day |
| 2/10/2014 | $1,000.00 | BOW/1321 - Vendor Payables $7665.62 | Same Day |
| | $2,500.00 | Chase Card | Same Day |
| 2/26/2014 | $18,000.00 | Chase Card - Payroll | Same Day |
| 5/2/2014 | $3,000.00 | Sears CC - Product Invoice $6687.84 | 5/6/2014 |
| 5/9/2014 | $3,000.00 | Sears CC - Vendor Payables $3671.67 | Same Day |

Exhibit C-2

Case 15-32026-pcm11   Doc 80-1   Filed 07/20/15   Page 1 of 1

**EXHIBIT D**

**Financial Summary**

EXHIBIT D

| Account | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | | |
| 4010 - Steel Commissions | 10,000.00 | 4,000.00 | 10,000.00 | 4,000.00 | 10,000.00 | 4,000.00 | 10,000.00 | 4,000.00 | 10,000.00 | 4,000.00 | 10,000.00 | 4,000.00 | 10,000.00 | 10,000.00 | 104,000.00 |
| 4030 - Sales Discounts | | | | | | | | | | | | | | | |
|   H-4031 - Headwear - Sales Discounts | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 588.00 |
|   4030 - Sales Discounts - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   Total 4030 - Sales Discounts | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 588.00 |
| H-4015 - Headwear - Sales Blank Caps | | | | | | | | | | | | | | | |
|   4016 - Sales - Blank Caps | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-4016 - Sales - Blank caps w/embroidery | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 63,000.00 |
|   H-4017 - Sales - Embroidery & Set Up Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-4018 - Sales - Special Order Off Shore | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 9,944.00 | 139,216.00 |
|   H-4022 - Domestic Caps - Blank & Embroid | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 6,200.00 | 86,800.00 |
|   H-4015 - Headwear - Sales Blank Cap - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   Total H-4015 - Headwear - Sales Blank Caps | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 20,686.00 | 289,604.00 |
| H-4019 - T-Shirt | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-4020 - Headwear - Freight Income | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 1,070.00 | 14,980.00 |
| H-4023 - Artwork Services - In house | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-4121 - Ball Markers | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 210.00 |
| **Total Income** | 31,813.00 | 25,813.00 | 31,813.00 | 25,813.00 | 31,813.00 | 25,813.00 | 31,813.00 | 25,813.00 | 31,813.00 | 25,813.00 | 31,813.00 | 25,813.00 | 31,813.00 | 31,813.00 | 409,382.00 |
| **Cost of Goods Sold** | | | | | | | | | | | | | | | |
| 5000 - Cost of Goods Sold | | | | | | | | | | | | | | | |
|   5100 - Material Costs | | | | | | | | | | | | | | | |
|     5103 - Steel - Inventory Adjustment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     5100 - Material Costs - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     Total 5100 - Material Costs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   5105 - Freight | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   5110 - Duty | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   5115 - Brokerage Fees | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 45.00 | 630.00 |
|   5120 - Agent Commission | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   5125 - Processing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   5130 - Wharf/Lading | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   5135 - Marine Insurance | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 868.00 |
|   5140 - Storage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5101 - Headwear - Material Costs | | | | | | | | | | | | | | | |
|     H-5104 - Headwear - Inventory Adjustment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     H-5101 - Headwear - Material Costs - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     Total H-5101 - Headwear - Material Costs | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 6,621.00 | 94,831.00 |
|   H-5102 - T-Shirts | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5103 - Ballmarkers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5106 - Headwear-Blank Cap Import Frt | | | | | | | | | | | | | | | |
|     H-5107 - Headwear - Freight-samples/misc | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 112.00 | 1,568.00 |
|     H-5108 - Headwear - Import frt-oceansld | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 1,065.00 | 14,910.00 |
|     H-5109 - Headwear-Courier/Frt to Custmr | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     H-5106 - Headwear-Blank Cap Import Frt - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     Total H-5106 - Headwear-Blank Cap Import Frt | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 1,177.00 | 16,478.00 |
|   H-5111 - Headwear - Duty | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 660.00 | 9,240.00 |
|   H-5116 - Headwear - Brokerage Fees | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 147.00 | 2,058.00 |
|   H-5121 - Headwear - Agent Commission | | | | | | | | | | | | | | | |
|     H-5122 - Agent Service Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     H-5121 - Headwear - Agent Commission - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|     Total H-5121 - Headwear - Agent Commission | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5125 - Steaming, Folding, Bagging | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5127 - Headwear - Outsource Embroidery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5127 - Screenprinting | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 56.00 |
|   H-5128 - Headwear-Design Set Up/Digitize | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5129 - Die Charge/Vectorizing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5131 - Headwear - Wharfage/Lading | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   H-5136 - Headwear - Marine Insurance | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 62.00 | 868.00 |
|   H-5141 - Headwear - Storage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   5000 - Cost of Goods Sold - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   Total 5000 - Cost of Goods Sold | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 150,862.00 |
| **Total COGS** | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 10,778.00 | 150,862.00 |
| **Gross Profit** | 21,035.00 | 15,035.00 | 21,035.00 | 15,035.00 | 21,035.00 | 15,035.00 | 21,035.00 | 15,035.00 | 21,035.00 | 15,035.00 | 21,035.00 | 15,035.00 | 21,035.00 | 21,035.00 | 258,490.00 |
| **Expense** | | | | | | | | | | | | | | | |
| 6105 - Amortization Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6110 - Automobile Expense | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 188.00 | 2,632.00 |
| 6115 - Auto Insurance | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 68.25 | 955.50 |
| 6117 - Bad Debt Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6120 - Bank Service Charges | | | | | | | | | | | | | | | |
|   H-6121 - Headwear - Bank Service Charges | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 37.00 | 518.00 |
|   6120 - Bank Service Charges - Other | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 24.05 | 336.70 |
|   Total 6120 - Bank Service Charges | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 61.05 | 854.70 |
| 6125 - Credit Card Service Fee | | | | | | | | | | | | | | | |
|   H-6126 - Headwear - Credit Card Service | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   6125 - Credit Card Service Fee - Other | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 2,380.00 |
|   Total 6125 - Credit Card Service Fee | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 2,380.00 |

Exhibit D

| Account | 1 Apr 27 - May 2, 15 | 2 Week of May 3, 15 | 3 Week of May 10, 15 | 4 Week of May 17, 15 | 5 Week of May 24, 15 | 6 Week of May 31, 15 | 7 Week of Jun 7, 15 | 8 Week of Jun 14, 15 | 9 Week of Jun 21, 15 | 10 Week of Jun 28, 15 | 11 Week of Jul 5, 15 | 12 Week of Jul 12, 15 | 13 Week of Jul 19, 15 | 14 Jul 26 - 27, 15 | TOTAL Apr 27 - Jul 27, 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6130 - Cash Discounts | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6135 - Catalog Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6140 - Contributions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6150 - Depreciation Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6160 - Dues and Subscriptions | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 54.00 | 756.00 |
| 6170 - Equipment Rental | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6190 - Insurance | | | | | | | | | | | | | | | |
| 6192 - Worker's Compensation | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6165 - Liability Insurance | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 141.75 | 1,984.50 |
| 6196 - Disability Insurance | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 20.40 | 285.60 |
| 6192 - Life Insurance | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 54.03 | 756.42 |
| 6195 - Owner medical and dental | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 355.00 | 4,970.00 |
| 6196 - Employee Medical & Dental | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 110.00 | 1,540.00 |
| H-6197 - Headwear - Emplye Med/Dental | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 655.00 | 9,170.00 |
| 6190 - Insurance - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total 6190 - Insurance | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 1,336.18 | 18,706.52 |
| 6200 - Interest Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6230 - Licenses and Permits | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 70.00 |
| 6235 - Loan Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6240 - Miscellaneous | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 42.00 |
| 6250 - Postage and Delivery | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 350.00 |
| 6260 - Printing and Reproduction | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6262 - Advertising | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6263 - Promotional Expense | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 17.41 | 243.74 |
| 6265 - Filing Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6267 - Advertising/Marketing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6270 - Professional Fees | | | | | | | | | | | | | | | |
| 6275 - Training | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6280 - Legal Fees | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 7,000.00 |
| 6650 - Accounting | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6276 - Headwear Training | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6651 - Headwear - Accounting | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6270 - Professional Fees - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total 6270 - Professional Fees | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 7,000.00 |
| 6285 - Franchise Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6290 - Rent | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 9,800.00 |
| 6300 - Repairs | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 7.00 | 98.00 |
| 6320 - Janitorial services | | | | | | | | | | | | | | | |
| H-6321 - Headwear - Janitorial services | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6320 - Janitorial services - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total 6320 - Janitorial services | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 65.00 | 910.00 |
| 6325 - Garbage/Sanitary Services | | | | | | | | | | | | | | | |
| H-6326 - Headwear - Garbage/Sanitary Ser | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6325 - Garbage/Sanitary Services - Other | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 280.00 |
| Total 6325 - Garbage/Sanitary Services | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 280.00 |
| 6340 - Telephone | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 560.00 |
| 6345 - Security/Alarm System | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6350 - Travel & Ent | | | | | | | | | | | | | | | |
| 6360 - Entertainment | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 7,000.00 |
| 6370 - Meals | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 980.00 |
| 6380 - Travel | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,800.00 |
| H-6361 - Headwear - Entertainment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6371 - Headwear - Meals | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 56.00 | 784.00 |
| H-6380 - Headwear - Travel | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 103.00 | 1,442.00 |
| 6350 - Travel & Ent - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total 6350 - Travel & Ent | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 929.00 | 13,006.00 |
| 6385 - Parking | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 280.00 |
| 6390 - Utilities | | | | | | | | | | | | | | | |
| Utilities Deposit | | | 1,260.00 | | | | | | | | | | | | |
| H-6391 - Headwear - Utilities | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 220.00 | 3,080.00 |
| 6390 - Utilities - Other | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 1,050.00 |
| Total 6390 - Utilities | 295.00 | 295.00 | 1,555.00 | 295.00 | 295.00 | 295.00 | 295.00 | 295.00 | 295.00 | 295.00 | 295.00 | 295.00 | 295.00 | 295.00 | 5,390.00 |
| 6540 - IT Support | | | | | | | | | | | | | | | |
| H-6541 - Headwear - IT Support | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 70.00 | 980.00 |
| 6540 - IT Support - Other | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 32.00 | 448.00 |
| Total 6540 - IT Support | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 102.00 | 1,428.00 |
| 6551 - Contract Labor Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6560 - Payroll Support | | | | | | | | | | | | | | | |
| 6565 - Payroll commissions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6570 - Payroll to Michael Ivory | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 21,000.00 |
| 6575 - Payroll - Office | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6580 - Employee Draws | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6585 - State Child Support Deduct | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6586 - Garnishments | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6561 - Headwear - Payroll Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6566 - Headwear - Payroll Commissions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6571 - Payroll Executive | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

Exhibit D

| Account | 1 Apr 27 - May 2, 15 | 2 Week of May 3, 15 | 3 Week of May 10, 15 | 4 Week of May 17, 15 | 5 Week of May 24, 15 | 6 Week of May 31, 15 | 7 Week of Jun 7, 15 | 8 Week of Jun 14, 15 | 9 Week of Jun 21, 15 | 10 Week of Jun 28, 15 | 11 Week of Jul 12, 15 | 12 Week of Jul 12, 15 | 13 Week of Jul 19, 15 | 14 Jul 26 - 27, 15 | TOTAL Apr 27 - Jul 27, 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| H-6376 · Headwear · Payroll · Office | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 6,775.00 | 94,850.00 |
| H-6581 · Headwear · Employee Draws | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6590 · Payroll Expenses · Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total 6560 · Payroll Expenses** | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 8,275.00 | 115,850.00 |
| **6600 · Payroll Tax Expense** | | | | | | | | | | | | | | | |
| 6610 · FICA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6620 · FUTA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6630 · Oregon Unemployment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6640 · Tri-Met | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6660 · Worker, OR-CIT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6611 · Headwear · FICA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6621 · Headwear · FUTA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6631 · Headwear · OR Unemployment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6641 · Headwear · Tri-Met | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6661 · Headwear · Worker, OR · CIT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6600 · Payroll Tax Expense · Other | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 9,800.00 |
| **Total 6600 · Payroll Tax Expense** | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 9,800.00 |
| 6750 · Storage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **6770 · Supplies** | | | | | | | | | | | | | | | |
| 6775 · Marketing | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6780 · Office | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6785 · Software | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6790 · Shipping | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6781 · Headwear · Office Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6791 · Headwear · Shipping | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6795 · Embroidery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6770 · Supplies · Other | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 6,440.00 |
| **Total 6770 · Supplies** | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 460.00 | 6,440.00 |
| **6820 · Taxes** | | | | | | | | | | | | | | | |
| 6830 · Federal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6840 · Local | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6850 · Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6860 · State | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6820 · Taxes · Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total 6820 · Taxes** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 68900 · Uncategorized Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6111 · Headwear · Automobile Expense | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 420.00 |
| H-6116 · Headwear · Auto Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6136 · Headwear · Catalog Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6161 · Headwear · Dues & Subscriptions | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 35.61 | 498.54 |
| H-6171 · Headwear · Equipment Rental | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6201 · Headwear · Interest Expense | | | | | | | | | | | | | | | |
| H-6221 · Headwear · License & Permits | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| H-6251 · Headwear · Postage & Delivery | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 19.50 | 273.00 |
| H-6259 · Headwear · Printing/Reproduction | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 325.00 |
| H-6261 · Headwear · Advertising | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 27.50 | 0.00 | 0.00 | 0.00 | 0.00 | 27.50 | 27.50 | 27.50 | 27.50 | 275.00 |
| H-6264 · Headwear · Promotional Expense | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 560.00 |
| H-6268 · Headwear · Advertise /Marketing | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 131.00 | 1,834.00 |
| H-6291 · Headwear · Rent Expense | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 1,074.00 | 15,036.00 |
| H-6301 · Headwear · Repairs Expense | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 105.00 |
| H-6341 · Headwear · Telephone Expense | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 85.00 | 1,190.00 |
| H-6396 · Headwear · Parking Expense | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 140.00 |
| H-6550 · Headwear · Contract Labor | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 1,050.00 |
| **Total Expense** | 15,573.50 | 15,573.50 | 16,833.50 | 15,573.50 | 15,601.00 | 15,601.00 | 15,601.00 | 15,601.00 | 15,576.00 | 15,601.00 | 15,601.00 | 15,601.00 | 15,601.00 | 15,601.00 | 219,539.04 |
| **Net Ordinary Income** | 5,461.50 | -536.50 | 4,201.50 | -536.50 | 5,434.00 | -566.00 | 5,434.00 | -566.00 | 5,459.00 | -566.00 | 5,434.00 | -566.00 | 5,434.00 | 5,434.00 | 38,951.00 |
| **Other Income/Expense** | | | | | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | | | | | |
| 7010 · Interest Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7030 · Other Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 8010 Other Expenses- UST FEE | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 348.00 | 4,872.00 |
| 8011 Contigency Expense | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 7,000.00 |
| **Total Other Expense** | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 848.00 | 11,872.00 |
| **Net Other Income** | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -616.00 | -617.00 | -8,625.00 |
| **Net Income** | 4,845.50 | -1,154.50 | 3,585.50 | -1,154.50 | 4,918.00 | -1,182.00 | 4,918.00 | -1,182.00 | 4,843.00 | -1,182.00 | 4,818.00 | -1,182.00 | 4,818.00 | 4,817.00 | 30,326.00 |
| | | | | | | | | | | | | | | | |
| Less Loan payments  to Bank | | | | | | ($55,000) | | | | ($55,000) | | | | ($55,000) | ($515,000) |
| | | | | | | | | | | | | | | | |
| Equals Residual for Past Due Creditors | 4845.50 | (1154.50) | 3585.50 | (1154.50) | 4818.00 | (6182.00) | 4818.00 | (1182.00) | 4843.00 | (6182.00) | 4818.00 | (1182.00) | 4818.00 | (383.00) | 15326.00 |
| | | | | | | | | | | | | | | | |
| Starting Cash Balance | 1034.00 | | | | | | | | | | | | | | |

Exhibit D
Page 3 of 10

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Apr 27 - May 2, 15 | Week of May 3, 15 | Week of May 10, 15 | Week of May 17, 15 | Week of May 24, 15 | Week of May 31, 15 | Week of Jun 7, 15 | Week of Jun 14, 15 | Week of Jun 21, 15 | Week of Jun 28, 15 | Week of Jul 5, 15 | Week of Jul 12, 15 | Week of Jul 19, 15 | Jul 26 - 27, 15 | Apr 27 - Jul 27, 15 |
| Accumlated Cash Balance | 5879.50 | 4725.00 | 8310.50 | 7156.00 | 11974.00 | 5792.00 | 10610.00 | 9428.00 | 14271.00 | 8089.00 | 12907.00 | 11725.00 | 16543.00 | 16360.00 | 16360.00 |

May/12/2015

| Month Start 8/1/2015 | | | | | | | | August | Sept | October | November | December | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Receipts: | | | | | | | | | | | | | | | |
| Steel Commissions | | | | | | | | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | | | 160,000 |
| With new 15 head machine | | | | | | | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | | | 75,000 |
| Headwear Sales | | | | | | | | 107,000 | 107,000 | 107,000 | 107,000 | 107,000 | | | 535,000 |
| Total Receipts | - | - | - | - | - | - | | 154,000 | 154,000 | 154,000 | 154,000 | 154,000 | | | 770,000 |
| | | | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | | | |
| Mfg Expenses | | | | | | | | 50,297 | 50,297 | 50,297 | 50,297 | 50,297 | | | 251,485 |
| Oper. Expenses | | | | | | | | 17,367 | 17,367 | 17,367 | 17,367 | 17,367 | | | 86,835 |
| Legal Fees | | | | | | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 25,000 |
| Payroll& Payroll taxes | | | | | | | | 29,900 | 29,900 | 29,900 | 29,900 | 29,900 | | | 149,500 |
| Payroll with new machine | | | | | | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 25,000 |
| Contingency | | | | | | | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | | | | | | | | 19,735 | 19,735 | 19,735 | 19,735 | 19,735 | | | 98,675 |
| Loan Pay BOW 7 yr AM 4.75% | | | | | | | | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | | 37,845 |
| New Machine 5 yr am at 7% | | | | | | | | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | | 9,900 |
| Unsecured debt-AM 60 months | | | | | | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 25,000 |
| Unsecured debt-less than $13k | | | | | | | | 6,500 | 6,500 | | | | | | 13,000 |
| Total Disbursements | - | - | - | - | - | - | | 149,848 | 149,848 | 143,348 | 143,348 | 143,348 | | | 729,740 |
| | | | | | | | | | | | | | | | |
| Net Profit | - | - | - | - | - | - | - | 4,152 | 4,152 | 10,652 | 10,652 | 10,652 | - | - | 40,260 |
| | - | - | - | - | - | - | - | | | | | | | | |

5/22/2015B

Note new machine 5 year am on $103,000 at 7% P&I

| 2016 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | |
| Expenses plus 3% | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 384,000 |
| With new 15 head machine | 15,000 | 15,000 | 16,000 | 16,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 15,000 | 203,000 |
| Headwear Sales | 107,000 | 107,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 107,000 | 1,329,000 |
| Total Receipts | 154,000 | 154,000 | 160,000 | 160,000 | 162,000 | 162,000 | 162,000 | 162,000 | 162,000 | 162,000 | 162,000 | 154,000 | 1,916,000 |
| | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | |
| Mfg Expenses | 50,297 | 50,297 | 52,320 | 52,320 | 52,975 | 52,975 | 52,975 | 52,975 | 52,975 | 52,975 | 52,975 | 50,297 | 626,356 |
| Oper. Expenses | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 17,948 | 215,376 |
| Legal Fees | 5,000 | 5,000 | 1,000 | | | | | | | | | | 11,000 |
| Payroll& Payroll taxes | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 369,564 |
| Payroll with new machine | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 25,750 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 243,924 |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 90,828 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | | | | | | | | | | | | | |
| Total Disbursements | 145,568 | 145,568 | 143,591 | 142,591 | 143,246 | 143,246 | 143,246 | 143,246 | 143,246 | 143,246 | 143,246 | 140,568 | 1,660,198 |
| | | | | | | | | | | | | | |
| Net Profit | 8,432 | 8,432 | 16,409 | 17,409 | 18,754 | 18,754 | 18,754 | 18,754 | 18,754 | 18,754 | 18,754 | 13,432 | - | - | 195,392 |
| 23-May-15 | | | | | | | | | | | | | |

Note new machine   5 year am  on $103,000  at 7% P&I

| 2017 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | |
| Expenses plus 3% | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 384,000 |
| With new 15 head machine | 16,000 | 16,000 | 18,000 | 18,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 18,000 | 16,000 | 234,000 |
| Headwear Sales | 112,000 | 112,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 112,000 | 1,389,000 |
| Total Receipts | 160,000 | 160,000 | 167,000 | 167,000 | 171,000 | 171,000 | 171,000 | 171,000 | 171,000 | 171,000 | 167,000 | 160,000 | 2,007,000 |
| | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | |
| Mfg Expenses  32.7% of Sales | 51,993 | 51,993 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 51,993 | 641,574 |
| Oper. Expenses | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 18,546 | 222,552 |
| Payroll& Payroll taxes | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 380,652 |
| Payroll with new machine | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 27,000 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 251,244 |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 90,828 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | | | | | | | | | | | | | |
| Total Disbursements | 144,646 | 144,646 | 146,608 | 146,608 | 146,608 | 146,608 | 146,608 | 146,608 | 146,608 | 146,608 | 146,608 | 144,646 | 1,691,250 |
| | | | | | | | | | | | | | |
| Net Profit | 15,354 | 15,354 | 20,392 | 20,392 | 24,392 | 24,392 | 24,392 | 24,392 | 24,392 | 24,392 | 20,392 | 15,354 | - | - | 253,590 |
| 23-May-15 | | | | | | | | | | | | | |

Note new machine   5 year am  on $103,000  at 7% P&I

| 2018 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | |
| Expenses plus 3% | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 384,000 |
| With new 15 head machine | 16,000 | 16,000 | 18,000 | 18,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 18,000 | 16,000 | 234,000 |
| Headwear Sales | 112,000 | 112,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 112,000 | 1,443,000 |
| Total Receipts | 160,000 | 160,000 | 173,000 | 173,000 | 177,000 | 177,000 | 177,000 | 177,000 | 177,000 | 177,000 | 173,000 | 160,000 | 2,061,000 |
| | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | |
| Mfg Expenses  32.7% of Sales | 52,320 | 52,320 | 56,575 | 56,575 | 57,879 | 57,879 | 57,879 | 57,879 | 57,879 | 57,879 | 56,575 | 52,320 | 673,959 |
| Oper. Expenses | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 19,162 | 229,944 |
| Payroll& Payroll taxes | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 392,076 |
| Payroll with new machine | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 67,200 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 258,780 |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 90,828 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | | | | | | | | | | | | | |
| Total Disbursements | 147,369 | 147,369 | 151,624 | 151,624 | 152,928 | 152,928 | 152,928 | 152,928 | 152,928 | 152,928 | 151,624 | 147,369 | 1,790,187 |
| | | | | | | | | | | | | | |
| Net Profit | 12,631 | 12,631 | 21,376 | 21,376 | 24,072 | 24,072 | 24,072 | 24,072 | 24,072 | 24,072 | 21,376 | 12,631 | - | - | 246,453 |
| 23-May-15 | | | | | | | | | | | | | |

Note new machine   5 year am  on $103,000  at 7% P&I

| 2019 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | |
| Expenses plus 3% /Pay roll plus 5% for 2019 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 384,000 |
| With new 15 head machine | 16,000 | 16,000 | 18,000 | 18,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 18,000 | 16,000 | 234,000 |
| Headwear Sales | 112,000 | 112,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 112,000 | 1,497,000 |
| Total Receipts | 160,000 | 160,000 | 179,000 | 179,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 179,000 | 160,000 | 2,115,000 |
| | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | |
| Mfg Expenses  32.7% of Sales | 52,320 | 52,320 | 58,533 | 58,533 | 59,841 | 59,841 | 59,841 | 59,841 | 59,841 | 59,841 | 58,533 | 52,320 | 691,605 |
| Oper. Expenses | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 19,797 | 237,564 |
| Payroll& Payroll taxes | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 411,684 |
| Payroll with new machine | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 70,560 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 266,544 |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 90,828 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| | | | | | | | | | | | | | |
| Total Disbursements | 150,565 | 150,565 | 156,778 | 156,778 | 158,086 | 158,086 | 158,086 | 158,086 | 158,086 | 158,086 | 156,778 | 150,565 | 1,846,185 |
| | | | | | | | | | | | | | |
| Net Profit | 9,435 | 9,435 | 22,222 | 22,222 | 24,914 | 24,914 | 24,914 | 24,914 | 24,914 | 24,914 | 22,222 | 9,435 | - | - | 244,455 |
| 23-May-15 | | | | | | | | | | | | | |

Note new machine   5 year am  on $103,000  at 7% P&I

| 2020 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | |
| Expenses plus 3%  /Pay roll plus 3% for 2020 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 384,000 |
| With new 15 head machine | 16,000 | 16,000 | 18,000 | 18,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 18,000 | 16,000 | 234,000 |
| Headwear Sales | 112,000 | 112,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 112,000 | 1,560,000 |
| Total Receipts | 160,000 | 160,000 | 186,000 | 186,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 186,000 | 160,000 | 2,178,000 |
| | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | |
| Mfg Expenses  32.7% of Sales | 52,320 | 52,320 | 60,822 | 60,822 | 62,130 | 62,130 | 62,130 | 62,130 | 62,130 | 62,130 | 60,822 | 52,320 | 712,206 |
| Oper. Expenses | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 269,412 |
| Payroll& Payroll taxes | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 432,264 |
| Payroll with new machine | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 72,672 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | | | | 10,500 |
| G&A (Rent, Ins, Mgmt Salary) | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 274,536 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | | | | | 13,860 |
| Total Expenses | 143,207 | 143,207 | 151,709 | 151,709 | 153,017 | 153,017 | 153,017 | 149,537 | 149,537 | 149,537 | 148,229 | 139,727 | 1,785,450 |
| Net Profit | | | | | | | | | | | | | 392,550 |
| Taxes at 40% | | | | | | | | | | | | | 157,020 |
| After Tax Profit | | | | | | | | | | | | | **235,530** |
| | | | | | | | | | | | | | |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | | | | | 52,983 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | | | 35,000 |

12-Jun-15

Note new machine  5 year am  on $103,000  at 7% P&I

Exhibit D
Page 10 of 10

**EXHIBIT E**

**Financial Projections**

EXHIBIT E

117387-0001/LEGAL125928975.4

| Month Start 8/1/2015 | | | | | | | | August | Sept | October | November | December | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts:** | | | | | | | | | | | | | | |
| Steel Commissions | | | | | | | | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | | 160,000 |
| With new 15 head machine | | | | | | | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | | 75,000 |
| Headwear Sales | | | | | | | | 107,000 | 107,000 | 107,000 | 107,000 | 107,000 | | 535,000 |
| Total Receipts | - | - | - | - | - | - | | 154,000 | 154,000 | 154,000 | 154,000 | 154,000 | | 770,000 |
| | | | | | | | | | | | | | | |
| **Disbursements:** | | | | | | | | | | | | | | |
| Mfg Expenses | | | | | | | | 50,297 | 50,297 | 50,297 | 50,297 | 50,297 | | 251,485 |
| Oper. Expenses | | | | | | | | 19,367 | 19,367 | 19,367 | 19,367 | 19,367 | | 96,835 |
| Payroll& Payroll taxes | | | | | | | | 29,900 | 29,900 | 29,900 | 29,900 | 29,900 | | 149,500 |
| Payroll with new machine | | | | | | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | 25,000 |
| Contingency | | | | | | | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | | | | | | | | 19,735 | 19,735 | 19,735 | 19,735 | 19,735 | | 98,675 |
| Loan Pay BOW 7 yr AM 4.75% | | | | | | | | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | 37,845 |
| UST Fee | | | | | | | | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | | 7,310 |
| New Machine 5 yr am at 7% | | | | | | | | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | 9,900 |
| Unsecured debt-AM 60 months | | | | | | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | 25,000 |
| Unsecured debt-less than $13k | | | | | | | | 6,500 | 6,500 | | | | | 13,000 |
| Total Disbursements | - | - | - | - | - | | - | 148,310 | 148,310 | 141,810 | 141,810 | 141,810 | | 722,050 |
| | | | | | | | | | | | | | | |
| Net Profit | - | - | - | - | - | - | - | 5,690 | 5,690 | 12,190 | 12,190 | 12,190 | - | - | 47,950 |
| | | - | - | - | - | - | - | - | | | | | | |

5/22/2015B

Note new machine  5 year am  on $103,000  at 7% P&I

| 2016 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | | | |
| Expenses plus 3% | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | | | 384,000 |
| With new 15 head machine | 15,000 | 15,000 | 16,000 | 16,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 15,000 | | | 203,000 |
| Headwear Sales | 107,000 | 107,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 112,000 | 107,000 | | | 1,329,000 |
| Total Receipts | 154,000 | 154,000 | 160,000 | 160,000 | 162,000 | 162,000 | 162,000 | 162,000 | 162,000 | 162,000 | 162,000 | 154,000 | | | 1,916,000 |
| | | | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | | | |
| Mfg Expenses | 50,297 | 50,297 | 52,320 | 52,320 | 52,975 | 52,975 | 52,975 | 52,975 | 52,975 | 52,975 | 52,975 | 50,297 | | | 626,356 |
| Oper. Expenses | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | 19,948 | | | 239,376 |
| Payroll& Payroll taxes | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | 30,797 | | | 369,564 |
| Payroll with new machine | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | 5,150 | | | 25,750 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | 20,327 | | | 243,924 |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | | 90,828 |
| UST Fee | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | | | 7,310 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 60,000 |
| | | | | | | | | | | | | | | | |
| Total Disbursements | 144,030 | 144,030 | 146,053 | 146,053 | 146,708 | 146,708 | 146,708 | 146,708 | 146,708 | 146,708 | 146,708 | 144,030 | | | 1,680,508 |
| | | | | | | | | | | | | | | | |
| Net Profit | 9,970 | 9,970 | 13,947 | 13,947 | 15,292 | 15,292 | 15,292 | 15,292 | 15,292 | 15,292 | 15,292 | 9,970 | - | - | 164,848 |
| 23-May-15 | | | | | | | | | | | | | | | |

Note new machine  5 year am  on $103,000  at 7% P&I

| 2017 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | | | |
| Expenses plus 3% | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | | | 384,000 |
| With new 15 head machine | 15,000 | 15,000 | 16,000 | 16,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 18,000 | 15,000 | | | 215,000 |
| Headwear Sales | 112,000 | 112,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 117,000 | 112,000 | | | 1,389,000 |
| Total Receipts | 159,000 | 159,000 | 165,000 | 165,000 | 169,000 | 169,000 | 169,000 | 169,000 | 169,000 | 169,000 | 167,000 | 159,000 | | | 1,988,000 |
| | | | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | | | |
| Mfg Expenses 32.7% of Sales | 51,993 | 51,993 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 53,955 | 51,993 | | | 641,574 |
| Oper. Expenses | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | 20,546 | | | 246,552 |
| Payroll& Payroll taxes | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | 31,721 | | | 380,652 |
| Payroll with new machine | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | 5,400 | | | 27,000 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | 20,937 | | | 251,244 |
| Loan Pay BOW 7 yr AM 4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | | 90,828 |
| UST Fee | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | | | 7,310 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 60,000 |
| | | | | | | | | | | | | | | | |
| Total Disbursements | 148,108 | 148,108 | 150,070 | 150,070 | 150,070 | 150,070 | 150,070 | 150,070 | 150,070 | 150,070 | 150,070 | 148,108 | | | 1,722,560 |
| | | | | | | | | | | | | | | | |
| Net Profit | 10,892 | 10,892 | 14,930 | 14,930 | 18,930 | 18,930 | 18,930 | 18,930 | 18,930 | 18,930 | 16,930 | 10,892 | - | - | 193,046 |
| 23-May-15 | | | | | | | | | | | | | | | |

Note new machine 5 year am on $103,000 at 7% P&I

| 2018 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | | | |
| Expenses plus 3% | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | | | 384,000 |
| With new 15 head machine | 16,000 | 16,000 | 18,000 | 18,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 18,000 | 16,000 | | | 234,000 |
| Headwear Sales | 112,000 | 112,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | 112,000 | | | 1,443,000 |
| Total Receipts | 160,000 | 160,000 | 173,000 | 173,000 | 177,000 | 177,000 | 177,000 | 177,000 | 177,000 | 177,000 | 173,000 | 160,000 | | | 2,061,000 |
| | | | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | | | |
| Mfg Expenses   32.7% of Sales | 52,320 | 52,320 | 56,575 | 56,575 | 57,879 | 57,879 | 57,879 | 57,879 | 57,879 | 57,879 | 56,575 | 52,320 | | | 673,959 |
| Oper. Expenses | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | 21,162 | | | 253,944 |
| Payroll& Payroll taxes | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | 32,673 | | | 392,076 |
| Payroll with new machine | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | | | 67,200 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | 21,565 | | | 258,780 |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | | 90,828 |
| UST Fee | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | | | 7,310 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 60,000 |
| | | | | | | | | | | | | | | | |
| Total Disbursements | 150,831 | 150,831 | 155,086 | 155,086 | 156,390 | 156,390 | 156,390 | 156,390 | 156,390 | 156,390 | 155,086 | 150,831 | | | 1,821,497 |
| | | | | | | | | | | | | | | | |
| Net Profit | 9,169 | 9,169 | 17,914 | 17,914 | 20,610 | 20,610 | 20,610 | 20,610 | 20,610 | 20,610 | 17,914 | 9,169 | - | - | 204,909 |
| 23-May-15 | | | | | | | | | | | | | | | |

Note new machine  5 year am  on $103,000  at 7% P&I

| 2019 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Asumptions | | | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | | | |
| Expenses plus 3% /Pay roll plus 5% for 2019 | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | | | 384,000 |
| With new 15 head machine | 16,000 | 16,000 | 18,000 | 18,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 18,000 | 16,000 | | | 234,000 |
| Headwear Sales | 112,000 | 112,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 129,000 | 112,000 | | | 1,497,000 |
| Total Receipts | 160,000 | 160,000 | 179,000 | 179,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 183,000 | 179,000 | 160,000 | | | 2,115,000 |
| | | | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | | | |
| Mfg Expenses  32.7% of Sales | 52,320 | 52,320 | 58,533 | 58,533 | 59,841 | 59,841 | 59,841 | 59,841 | 59,841 | 59,841 | 58,533 | 52,320 | | | 691,605 |
| Oper. Expenses | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | 21,797 | | | 261,564 |
| Payroll& Payroll taxes | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | 34,307 | | | 411,684 |
| Payroll with new machine | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | 5,880 | | | 70,560 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | 7,500 |
| G&A (Rent, Ins, Mgmt Salary) | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | 22,212 | | | 266,544 |
| Loan Pay  BOW 7 yr AM  4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | | 90,828 |
| UST Fee | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | | | 7,310 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | | 9,900 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 60,000 |
| | | | | | | | | | | | | | | | |
| Total Disbursements | 154,027 | 154,027 | 160,240 | 160,240 | 161,548 | 161,548 | 161,548 | 161,548 | 161,548 | 161,548 | 160,240 | 154,027 | | | 1,877,495 |
| | | | | | | | | | | | | | | | |
| Net Profit | 5,973 | 5,973 | 18,760 | 18,760 | 21,452 | 21,452 | 21,452 | 21,452 | 21,452 | 21,452 | 18,760 | 5,973 | - | - | 202,911 |
| 23-May-15 | | | | | | | | | | | | | | | |

Note new machine  5 year am  on $103,000  at 7% P&I

| 2020 Projections | January | February | March | April | May | June | July | August | Sept | October | November | December | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Assumptions | | | | | | | | | | | | | | | |
| Steel revenue flat | | | | | | | | | | | | | | | |
| Headwear roughly plus 5% adjusted for seasonal | | | | | | | | | | | | | | | |
| Expenses plus 3% /Pay roll plus 3% for 2020 | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Receipts: | | | | | | | | | | | | | | | |
| Steel Commissions | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | | | 384,000 |
| With new 15 head machine | 16,000 | 16,000 | 18,000 | 18,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 18,000 | 16,000 | | | 234,000 |
| Headwear Sales | 112,000 | 112,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 136,000 | 112,000 | | | 1,560,000 |
| Total Receipts | 160,000 | 160,000 | 186,000 | 186,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 186,000 | 160,000 | | | 2,178,000 |
| | | | | | | | | | | | | | | | |
| Disbursements: | | | | | | | | | | | | | | | |
| Mfg Expenses 32.7% of Sales | 52,320 | 52,320 | 60,822 | 60,822 | 62,130 | 62,130 | 62,130 | 62,130 | 62,130 | 62,130 | 60,822 | 52,320 | | | 712,206 |
| Oper. Expenses | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | 22,451 | | | 269,412 |
| Payroll& Payroll taxes | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | 36,022 | | | 432,264 |
| Payroll with new machine | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | 6,056 | | | 72,672 |
| Contingency | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | | | | | | | | 10,500 |
| G&A (Rent, Ins, Mgmt Salary) | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | 22,878 | | | 274,536 |
| Loan Pay BOW 7 yr AM 4.75% | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | 7,569 | | | | | | | | 52,983 |
| UST Fee | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | | | | | | | | 10,234 |
| New Machine 5 yr am at 7% | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | 1,980 | | | | | | | | 13,860 |
| Unsecured debt-AM 60 months | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | | | | | 35,000 |
| | | | | | | | | | | | | | | | |
| Total Disbursements | 157,238 | 157,238 | 165,740 | 165,740 | 167,048 | 167,048 | 167,048 | 149,537 | 149,537 | 149,537 | 148,229 | 139,727 | | | 1,883,667 |
| | | | | | | | | | | | | | | | |
| Net Profit | 2,762 | 2,762 | 20,260 | 20,260 | 22,952 | 22,952 | 22,952 | 40,463 | 40,463 | 40,463 | 37,771 | 20,273 | - | - | 294,333 |
| 23-May-15 | | | | | | | | | | | | | | | |

Note new machine  5 year am  on $103,000  at 7% P&I

# CASH BUDGET – 8/1/2015 TO 12/31/2020

## Assumptions

| Projections Summary: | Projected FY 2016 | Projected FY 2017 | Projected FY 2018 | Projected FY 2019 | Projected FY 2020 |
|---|---|---|---|---|---|
| Revenues | 1,916,000 | 1,988,000 | 2,061,000 | 2,115,000 | 2,178,000 |
| Gross Profit | 905,644 | 962,426 | 1,003,041 | 1,035,395 | 1,081,794 |
| GP as a % | 59.1% | 60.0% | 59.8% | 60.0% | 60.3% |
| Op. Exp | 1,054,152 | 1,080,986 | 1,147,538 | 1,185,890 | 1,171,461 |
| Net Profit Bef. Taxes | 164,848 | 193,046 | 204,909 | 202,911 | 294,333 |
| Net Profit as a % | 8.6% | 9.7% | 9.8% | 9.6% | 13.5% |

Revenues:

- Revenues consist of three areas: Steel commissions, headwear sales, and expected headwear sales as a result of acquiring a new 15-head embroidery machine.
  - Steel commissions were kept flat at $384K/year. In actual FY 2014, steel commissions were $240K. Through 4/24/15, steel commissions were annualizing much higher at approximately $480K/year for a 100% growth rate. The assumptions at $384K/year allows for a negative impact occurring from the current trend as a result of the bankruptcy filing as well as creates a conservative assumption for a sales area that can fluctuate considerably in the steel market.
  - Headwear revenues were assumed to grow by approximately 5% per year. The $1,329K revenues projected, for example, for FY 2016 are a 23.7% increase over FY 2014 revenues of $1,074K. However, through 4/24/15 the revenues realized year-to-date is 21.8% higher than the comparable period a year earlier ($385K vs. $316K). Actual income since the bankruptcy filing as well as booked income for the next three months confirms the trend of sales growth is continuing.
  - The new 15-head embroidery machine is projected to produce $203K of revenues in 2016 and also grow 5% per year thereafter. The revenue figures were determined by reviewing lost sales opportunities. There have been multiple jobs lost from not being able to produce large quantity orders of embroidered caps in shorter periods of time than the 90 days that it now takes for off shore production/shipment.
  - The monthly projections also allow for typical lower sales seasonality in all sales areas during the months of December-February.

Cost of Goods:

- Steel revenues are all commissioned sales and therefore carry no cost of goods. The gross profit is therefore determined by subtracting steel commission revenues from total revenues.
- Cost of Goods only includes direct costs for acquiring the basic headwear product – material costs and shipment costs. For the interim period of 1/1/14-4/24/14, the COGs were 59.9% for a 41.1% gross profit margin. For the full FY 2014, COGS was down to 55.8% and so the gross profit percentage rose to 44.8%. For the interim period of 1/1/15-4/24/15, the COGS were again lower at 50.6% for a 49.4% gross profit margin. As discussed in prior reports, the improvement is the result of higher efficiency such as saving on port inspection fees by packing multiple orders on the same ship. With the benefit of full year-over-year efficiency in place and the addition of

Case 15-32026-pcm11    Doc 80-1    Filed 07/20/15

Exhibit E
Page 7 of 8

the new machine that has labor savings benefits even higher than the current machinery, it is expected that the approximate 60% gross profit margin is realizable. Should Debtor be incorrect and only realize half of the improvement, there is sufficient margin in the net profit margin to make up for such a deficiency.

Operating Expenses:

- Costs such as salesmen salaries and benefits, travel, advertising, marketing, embroidery supplies, etc. are included within Operating Expenses. In FY 2014, the total operating expenses were $716K. Through the interim period ended 4/24/15, the annualized operating expenses were $780M. The higher amount in 2015 supports higher revenue growth and yet was at a level lower than normal operations in that there were periods where the owner took no salary and not all creditors were paid current.
- Going forward, the cash flow projection model assumes expenses rising 3%. This is lower than the revenue rise percentage of flat revenues in steel commission sales, 5% growth in headwear sales, and the additional income of the new embroidery machine. The exception to operating expenses growing are that 1) the owner receives no increase in his salary, 2) rent rises only by contractual amounts, 3) contingency expense declines from $2K per month to $1.5K per month due to a higher comfort level in the bankruptcy process at identifying bankruptcy-related expenses, and 4) all debtors and the Court accept the proposed payment plans put forth by Debtor.
- Included within projections are the ongoing mandated U.S. Trustee fee amounts, paying small creditors in full on their total $13K amount within the first 60 days of the plan implementation, paying the past due three largest unsecured creditors (Nucor, the landlord –Division Place, Vulcan) their total $60K amount over five years, and paying Bank of the West on a seven year amortization and five year balloon at 4.75%.

Notes:

- The net profits realized in the projections are shown without the calculation of an income tax expense. There are tax loss carry forwards of approximately $180,000 that will be applied as the outside CPA calculates tax returns at the appropriate filing dates.
- The net profit improves considerably in 2020 since the five year Plan will have been implemented in full by the end of July of 2020 and therefore the elimination of Plan expenses and debt .
- Should there be profits after payment of income taxes, the residual can be accumulated to pay the approximate $180K balloon balance of the note that will be owing to Bank of the West. Alternatively, the operating assets of the Debtor should be sufficient in amount at that time in order to be pledged to an asset-based or bank lender for an amount higher than the Bank of the West payoff, and Debtor can review the situation for purchase of another embroidery machine. The proposed new machine in the Plan will have reached full capacity at the end of its five year of use although its actual useful life should continue thereafter for a considerable period of time.

# EXHIBIT F

## Revolving Line of Credit Agreement

EXHIBIT F

# REVOLVING LINE OF CREDIT AGREEMENT

This Revolving Line of Credit Agreement (the "Agreement") is made and entered into this 23rd[t] day of April, 2015 (the "Effective Date"), by and among Maxwell Morgan LLC, a Nebraska limited liability company (the "Lender"), and Michael P. Ivory, as an individual residing in Oregon and (referred to as "Borrower").

In consideration of the mutual covenants and agreements contained herein, the parties agree as follows:

1.    Line of Credit.  Lender hereby establishes for a period of not more than twelve (24) months from the Effective Date (the "Maturity Date") a revolving line of credit (the "Credit Line") for Borrower in the principal amount of TWO HUNDRED THOUSAND DOLLARS ($200,000) (the "Credit Limit") which indebtedness shall be evidenced by and repaid in accordance with the terms of one or more a promissory notes for the amount of the Credit Limit in substantially the form attached hereto as Exhibit A (each a "Promissory Note").  All sums advanced on the Credit Line or pursuant to the terms of this Agreement (each an "Advance") shall become part of the principal of the applicable Promissory Note.  This Line of Credit can be canceled at any time and any amount outstanding would be due upon demand.

2.    Advances.

(a)    Lender agrees to make funds available under this Credit Line based solely upon the discretion of the Lender.

(b)    Subject to subparagraph (a) above, any request for an Advance may be made from time to time and in such amounts as the Borrower may choose, provided, however, any requested Advance will not, when added to the outstanding principal balance of all previous Advances, exceed the Credit Limit.  Requests for Advances must be made in writing, delivered to the Lender, by Borrower.  For each Advance, properly requested, the Lender shall advance an amount equal to the Advance amount.  The Lender may refuse to make any requested Advance if an event of default has occurred and is continuing hereunder either at the time the request is given or the date the Advance is to be made, or if an event has occurred or condition exists which, with the giving of notice or passing of time or both, would constitute an event of default hereunder as of such dates.

3.    Interest.  All sums advanced pursuant to this Agreement shall bear interest from the date each Advance is made until paid in full at an interest rate of  ten percent (7%) per annum (the "Interest Rate").  Interest will be calculated on a basis of a 360-day year and charged for the actual number of days elapsed.

Notwithstanding the foregoing, upon the occurrence of an Event of Default hereunder, the Interest Rate shall immediately increase to twenty four percent (24%), and shall continue at such rate, both before and after judgment, until the Credit Line has been repaid in full and all of Borrowers' other obligations to Lender hereunder have been fully paid and discharged.

4.    Repayment.  Subject to paragraph 2 above, Borrower shall pay accrued interest on the outstanding principal balance on monthly basis commencing on June 1, 2015, and continuing on the first of each month thereafter. The entire unpaid principal balance, together with any accrued interest and other unpaid charges or fees hereunder, shall be due and payable on the Maturity Date or demand.  Payment shall be made to the Lender at such place as the Lender may, from time to time, designate in lawful money of the United States of America.  All payments received hereunder shall be applied as follows: first, to any late charge; second, to any costs or expenses incurred by Lender in collecting such payment or to any other unpaid charges or expenses due hereunder; third, to accrued interest; fourth, to principal; and fifth, the balance, if any, to such person entitled thereto; provided, however, upon occurrence of an Event of Default, a Lender may, in its discretion, change the priority of the application of payments as it deems appropriate.  Borrower may prepay principal and/or interest at any time without penalty.

5.    Conditions Precedent.  The Lender shall not be required to make any advance hereunder unless and until:

(a)     All of the documents required by such Lender, including a Promissory Note, have been duly executed and delivered to such Lender and shall be in full force and effect.

(b)     The representations and warranties contained in this Agreement are then true with the same effect as though the representations and warranties had been made at such time. The request for an Advance by Borrowers shall constitute a reaffirmation to Lender that all representations and warranties made herein remain true and correct in all material respects to the same extent as though given the time such request is made, and that all conditions precedent listed in this Paragraph 5 have been, and continue to be, satisfied in all respects as of the date such request is made.

(c)     No event of default hereunder has occurred and is continuing, and no condition exists or event has occurred which, with the passing of time or the giving of notice or both, would constitute an event of default hereunder.

6.     Representations and Warranties. In order to induce Lender to enter into this Agreement and to make the advances provided for herein, Borrower represents and warrants to Lender as follows:

(a)     Borrower is a resident of the State of Oregon.

(b)     Borrower has the authority and power to execute and deliver any document required hereunder and to perform any condition or obligation imposed under the terms of such documents.

(c)     No information or report furnished by Borrower to Lender in connection with the negotiation of this Agreement contained any material misstatement of fact or omitted to state a material fact or any fact necessary to make the statements contained therein not misleading.

(d)     Borrower has all necessary permits, licenses, governmental authorization and consents necessary to conduct his business.

7.     Affirmative Covenants. So long as any sum remains unpaid hereunder, in whole or in part, Borrower covenants and agrees that except with the prior written consent of the Lender, which consent will not be unreasonably withheld, it shall do the following:

(a)     Borrower shall furnish to Lender such financial statements as Lender may from time to time require, including but not limited to, annual audited financial statements and semi-annual unaudited financial statements. Such financial statements will set forth Borrower's assets, liabilities, and operating statements prepared in accordance with generally accepted accounting principles. Such financial statements will be made available to Lender as soon as possible after the end of the appropriate periods, but no less than ninety (90) days after Borrower's fiscal year and forty-five (45) days after the end of Borrower's half-year. Borrower shall furnish such additional information regarding its business affairs and financial condition as Lender may from time to time in good faith request.

(b)     Borrower shall duly observe and conform to all valid requirements of any governmental authority relative to the conduct of their business, their properties, or their assets and will maintain and keep in full force and effect their corporate existence and all licenses and permits necessary to the proper conduct of his business.

(c)     Borrower shall keep proper books of records and accounts in which full, true, and correct entries will be made of all dealings or transactions relating to their business and activities.

(d)     Borrower shall (1) file all applicable federal, state, and local tax returns or other statements required to be filed in connection with its business, including those for income taxes, sales taxes, property taxes, payroll taxes, payroll withholding amounts, FICA contributions, and similar items; (2) maintain appropriate reserves for the accrual of the same; and (3) pay when due all such taxes, or sums or assessments made in connection therewith. Provided, however, that (until distraint, foreclosure, sale, or similar proceedings have been

commenced) nothing herein will require Borrower to pay any sum or assessment, the validity of which is being contested in good faith by proceedings diligently pursued and as to which adequate reserves have been made.

(e)     Borrower shall permit any person designated in writing by Lender to visit and inspect any of the corporate books and financial records of Borrower and to discuss their affairs and finances, all at such reasonable times and as often as Lender may in good faith request, subject o any reasonable conditions imposed by Borrower.

8.     Negative Covenants.  So long as any amounts due hereunder remain unpaid in whole or in part, Borrower covenants that except with the prior written consent of the Lender, which consent will not be unreasonably withheld, it will not do any of the following:

(a)     Borrower shall not create or permit to exist any lien, claim, or encumbrance on the assets of Borrower or any part thereof, except as may be granted to Lender.

9.     Events of Default.  An event of default (each, an "Event of Default") will occur if any of the following events occurs:

(a)     Failure to pay any principal or interest hereunder within ten (10) days after the same becomes due.

(b)     Any representation or warranty made by Borrower in this Agreement or in connection with any borrowing or request for an advance hereunder, or in any certificate, financial statement, or other statement furnished by Borrower to Lender is untrue in any material respect at the time when made.

(c)     Default by Borrower in the observance or performance of any other covenant or agreement contained in this Agreement, other than a default constituting a separate and distinct event of default under this Paragraph 9.

(d)     Default by Borrower in the observance or performance of any other covenant or agreement contained in any other document or agreement made and given in connection with this Agreement, other than a default constituting a separate and distinct event of default under this Paragraph 9, and the continuance of the same unremedied for a period of thirty (30) days after notice thereof is given to Borrower.

(e)     Any of the documents executed and delivered in connection herewith for any reason ceases to be valid or in full force and effect or the validity or enforceability of which is challenged or disputed by any signer thereof, other than Lender.

(f)     Borrower shall default in the payment of principal or interest on any other obligation for borrowed money other than hereunder, or defaults in the payment of the deferred purchase price of property beyond the period of grace, if any, provided with respect thereto, or defaults in the performance or observance of any obligation or in any agreement relating thereto, if the effect of such default is to cause or permit the holder or holders of such obligation (or trustee on behalf of such holder or holders) to cause such obligation to become due prior to the stated maturity.

(g)     Filing by Borrower of a voluntary petition in bankruptcy seeking reorganization, arrangement or readjustment of debts, or any other relief under the Bankruptcy Code as amended or under any other insolvency act or law, state or federal, now or hereafter existing.

(h)     The filing of an involuntary petition against Borrower in bankruptcy seeking reorganization, arrangement or readjustment of debts, or any other relief under the Bankruptcy Code as amended, or under any other insolvency act or law, state or federal, now or hereafter existing, and the continuance thereof for sixty (60) days undismissed, unbonded, or undischarged.

(i)     All or any substantial part of the property of Borrower shall be condemned, seized, or otherwise appropriated, or custody or control of such property is assumed by any governmental agency or any court of competent jurisdiction, and is retained for a period of thirty (30) days.

10.     Remedies.  Upon the occurrence of an Event of Default as defined above, the Lender may declare the entire unpaid principal balance, together with accrued interest thereon, to be immediately due and payable without presentment, demand, protest, or other notice of any kind.  Lender may suspend or terminate any obligation it may have hereunder to make additional Advances.  To the extent permitted by law, Borrower waives any rights to presentment, demand, protest, or notice of any kind in connection with this Agreement.  No failure or delay on the part of the Lender in exercising any right, power, or privilege hereunder will preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  The rights and remedies provided herein are cumulative and not exclusive of any other rights or remedies provided at law or in equity.  Borrower agrees to pay all costs of collection incurred by reason of the default, including court costs and reasonable attorney's fees, whether or not the attorney is a salaried employee of Lender, including such expenses incurred before or after any legal action or Bankruptcy proceeding involving Borrower has commenced, during the pendency of such proceedings, and continuing to all such expenses in connection with any appeal to higher courts arising out of matters associated herewith.

11.     Collateral.  As security for all obligations of Borrower to Lender, Borrower hereby grants to Lender security interests in all of Borrower's cars, personal property, household goods, and real property, whether currently owned or hereafter acquired by Borrower.  The foregoing shall be evidenced by such security agreements, financing statements, pledges, collateral assignments and other documents and instruments as Lender shall reasonably require, all in form and substance satisfactory to Lender.  Borrower shall reimburse Lender immediately upon demand for all costs and expenses incurred by Lender in connection with any of the foregoing security, including, without limitation, any filing fees.

12.     Notice.  Unless otherwise specifically provided herein, all notices required to be given  shall be in writing addressed to the respective party as set forth below and may be personally served, sent by facsimile transmission, or sent by overnight courier service or United States mail.  Such notices shall be deemed to have been given:  (a) if delivered in person, when delivered; (b) if sent by facsimile transmission, on the date of transmission if transmitted by 4:00 p.m. (Salem, Oregon time) on a Banking Day or, if not, on the next succeeding Banking Day; (c) if delivered by overnight courier, one (1) Banking Day after delivery to such courier properly addressed; or (d) if by United States mail, three (3) Banking Days after depositing in the United States mail, postage prepaid and properly addressed.  Notices shall be addressed as follows:

LENDER:          MAXWELL MORGAN, LLC
                 Attention: Rex Hansen
                 Managing Member
                 11565 SW 67th Ave
                 Portland, Oregon 97223
                 Telephone: (402) 312-333
                 Email: rexh@maxwellmorgan.com

BORROWER:        Michael P. Ivory
                 4400 NE 34th Ave.
                 Portland, OR 97211

13.     General Provisions.  All representations and warranties made in this Agreement and the Promissory Note shall survive the execution and delivery of this Agreement and the making of any loans hereunder.  This Agreement will be binding upon and inure to the benefit of Borrower and Lender, their respective successors and assigns, except that Borrower may not assign or transfer its rights or delegate their duties hereunder without the prior written consent of Lender.  This Agreement, the Promissory Note, and all documents and instruments associated herewith will be governed by and construed and interpreted in accordance with the laws of the State of Oregon.  Time is of the essence hereof.  Lender may set off against any debt or account it owes Borrower, now existing or hereafter arising, in accordance with its rules and regulations governing deposit accounts

then in existence, and for such purposes is hereby granted a security interest in all such accounts. This Agreement will be deemed to express, embody, and supersede any previous understanding, agreements, or commitments, whether written or oral, between the parties with respect to the general subject matter hereof. This Agreement may not be amended or modified except in writing signed by the parties.

14.     Counterparts; Facsimile Signatures. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original instrument, and all of which shall constitute a single agreement. The signature of a party to any counterpart shall be sufficient to legally bind such party. Lender may remove the signature pages from one or more counterparts and attach them to any other counterpart for the purpose of having a single document containing the signatures of all parties. Any party may effect the execution and delivery of this Agreement by signing the same and sending a copy thereof to Lender or its attorney by facsimile transmission. Such facsimile document, including the signatures thereon, shall be treated in all respects as an original instrument bearing an original signature. Any party sending an executed copy by facsimile transmission in the foregoing manner shall also send the original thereof to Lender within five (5) days thereafter, but failure to do so shall not invalidate or otherwise affect the legality or enforceability of the facsimile document.

15.     Waiver of Jury Trial. BORROWER AND LENDER EACH AGREE TO WAIVE THE RIGHT TO HAVE A JURY HEAR, DETERMINE, OR MAKE ANY RECOMMENDATION WITH RESPECT TO THIS AGREEMENT, THE PROMISSORY NOTE, AND ANY CLAIMS ARISING IN CONNECTION HEREWITH OR WITH ANY OF THE FOREGOING, WHETHER SUCH CLAIMS ARE BASED ON PRINCIPLES OF STATUTORY, CONTRACT, OR TORT LAW. THE PARTIES AGREE THAT ALL SUCH MATTERS SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. THE PARTIES ACKNOWLEDGE THAT THIS WAIVER WAS A MATERIAL FACTOR IN THEIR DECISION TO ENTER INTO THIS AGREEMENT AND ENGAGE IN THE TRANSACTIONS DESCRIBED HEREIN.

16.     Entire Agreement. This Agreement, together with the Promissory Note, and the Security Agreement, constitutes the entire understanding and agreement of the parties with respect to the general subject matter hereof; supersede all prior negotiations and agreements with respect thereto; may not be contradicted by evidence of any alleged oral agreement; and may not be amended, modified, or rescinded in any manner except by a written agreement signed by Lender which clearly and unequivocally expresses an intent to amend, modify, or rescind the same.

IN WITNESS WHEREOF, the parties have executed this Revolving Line of Credit Agreement effective as of the Effective Date.

**BORROWERS:**                          **LENDER:**

                                        Maxwell Morgan, LLC,
                                        a Nebraska limited liability company

_____

Michael P. Ivory

                                        By: _____
                                        Name: Rex Hansen
                                        Its: Managing Member

**EXHIBIT A**

# REVOLVING LINE OF CREDIT NOTE

$200,000                                                                                      April ____, 2015

   FOR VALUE RECEIVED, Michael P. Ivory, as an individual residing in Oregon (referred to as "Borrower") promise to pay to the order Maxwell Morgan, LLC, a Nebraska limited liability company ("Lender"), in lawful money of the United States of America, the principal sum of TWO HUNDRED THOUSAND DOLLARS ($200,000) or the aggregate unpaid principal amount of all advances made by Lender to Borrower pursuant to the terms of a Revolving Line of Credit Agreement (the "Loan Agreement") of even date herewith, whichever is less, together with interest thereon from the date each advance is made until paid in full, both before and after judgment, at an interest rate of ten percent (7%) (the "Interest Rate"). Interest shall be calculated on the basis of a 360-day year using the actual number of days elapsed divided by 360.

   1.  Principal Payments. All payments of the principal amount of Lender's Advances shall be made in lawful money of the United States of America and shall be due and payable on the date(s) determined pursuant to the Loan Agreement.

   2.  Interest Rate. Interest is payable in arrears annually, commencing June 1, 2015. Interest will be computed on the basis of the actual number of days elapsed in the period during which interest accrues and a year of three hundred sixty (360) days. The Loan Agreement provides for the payment by Borrowers of various other charges and fees, in addition to the interest charges described in the Loan Agreement, as set forth more fully in the Loan Agreement.

   3.  Maturity. The principal amount of this Note, unless accelerated in accordance with the Loan Agreement as described below, if not sooner paid, will be due and payable, together with all accrued and unpaid interest and other amounts due and unpaid under the Loan Agreement, on September 30, 2013.

   4.  Prepayment. Borrower may pre-pay the sums due under this Note, in whole or in part, at any time from time to time, without penalty or premium, subject to the requirements provided in the Loan Agreement.

   5.  Default. Upon and after the occurrence of an Event of Default (as set forth in the Loan Agreement) unless such Event of Default is waived as provided in the Loan Agreement, this Note may, at the option of Lender and without further demand, notice or legal process of any kind, be declared by Lender, and in such case shall immediately become, due and payable.

   6.  Waiver. Demand, presentment, protest and notice of non-payment and protest, notice of intention to accelerate maturity, notice of acceleration of maturity and notice of dishonor are hereby waived by Borrower. Subject to the terms of the Loan Agreement, Lender may extend the time of payment of this Note, postpone the enforcement hereof, grant any indulgences, release any party primarily or secondarily liable hereon, or agree to any subordination of Borrower's obligations hereunder without affecting or diminishing Lender's right of recourse against Borrower, which right is hereby expressly reserved.

   7.  Governing Law. This Note shall be interpreted in accordance with, and the rights and liabilities of the parties hereto shall be determined and governed by, the laws of the State of Oregon.

   8.  Successors and Assigns. The provisions of this Note shall inure to the benefit of and be binding on any successor to Borrower.

   9.  Notices. All notices or other communications required or permitted to be given pursuant to this Note shall be given to Borrower or Lender at the address and in the manner provided for in the Loan Agreement.

   10.  Amendment; Entire Agreement. The terms of this Note may be amended only in writing signed by Borrower and Lender. This Note, together with the Loan Agreement, constitutes and contains the entire agreement between and among the parties regarding the subject matter hereof, and supersedes and replaces all prior

agreements, promises and understandings, whether written or oral, proposed or otherwise, regarding the subject matter hereof.

11.    <u>Construction</u>.  Whenever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

BORROWER:

By: _____
     Michael P. Ivory

After Recording, return to:
Maxwell Morgan, LLC
11560 SW 67th Ave, Suite 200W
Portland, OR 97223

Grantor' Name and Address:
Michael P. Ivory
4400 NE 34th Ave.
Portland, OR 97211

Beneficiary's Name and Address:
Maxwell Morgan, LLC
11560 SW 67th Ave, Suite 200W
Portland, OR 97223

## LINE OF CREDIT DEED OF TRUST

The maximum principal amount to be advanced pursuant to the credit agreement secured by this Line of Credit Deed of Trust is $200,000. The maturity date of the credit agreement secured by this Line of Credit Deed of Trust, exclusive of any option to renew or extend such maturity date is April 23, 2017.

THIS DEED OF TRUST, made this _23_ day April, 2015, between Michael P. Ivory ("Grantor"), and Nicholas J. Henderson ("Trustee"), whose address is Motschenbacher & Blattner LLP, 117 SW Taylor Street, Suite 200, Portland, OR 97204-3029, and Maxwell Morgan, LLC ("Beneficiary") whose address is 11560 SW 67th Ave, Suite 200W, Portland, OR 97223.

WITNESSETH: Grantor hereby bargain, sell and convey to Trustee in Trust, with power of sale, the real property located on 4400 NE 34th Ave., Portland, OR 97211, in Multnomah County, Oregon, more fully described as:

Willamette Addition, Lot 10 & 11, Block 4, Map 2634

which real property is not used principally for agricultural or farming purposes, together with all the tenements, hereditament, and appurtenances now or hereafter thereunto belonging or in any wise appertaining, and the rents, issues and profits thereof.

This Deed of Trust is for the purpose of securing performance of each agreement of Grantor herein contained, and the payment by Grantor of all amounts due in satisfaction of each obligation of Grantor in their Revolving Line of Credit Agreement and Revolving Line of Credit Note with Beneficiary.

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, GRANTOR COVENANT AND AGREE:**

1. To keep the property in good condition and repair; permit no waste thereof; to complete any building, structure or improvement being built or about to be built thereon; to restore promptly any building, structure or improvement there on which may be damaged or destroyed; and to comply with all law, ordinances, regulations, covenants, conditions and restrictions affecting the property.

PAGE 1 - LINE OF CREDIT DEED OF TRUST

C:\Users\Schalise V\Documents\Ivory LOC Trust Deed.docx

2. To pay before delinquent all lawful taxes and assessments upon the property; to keep the property free and clear of all other charges, liens or encumbrances impairing the security of this Deed of Trust.

3. To keep all buildings now or hereafter erected on the property described herein continuously insured against loss by fire or other hazards in an amount not less than the total debt secured by this Deed of Trust. All policies shall be held by the Beneficiary, and be in such companies as the Beneficiary may approve and have loss payable first to the beneficiary as its interest may appear and then to the Grantor. The amount collected under any insurance policy may be applied upon any indebtedness hereby secured in such order as the Beneficiary shall determine. Such application by the Beneficiary shall not cause discontinuance of any proceedings to foreclose this Deed of Trust. In the event of foreclosure, all rights of the Grantor in insurance policies then in force shall pass to the purchaser at the foreclosure sale.

4. To defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses, including cost of title search and attorney's fees actually incurred, as provided by statute.

5. Should Grantor fail to pay when due any taxes, assessments, insurance premiums, liens, encumbrances or other charges against the property hereinabove described, Beneficiary may pay the same, and the amount so paid, with interest at the rate set forth in the note secured hereby, shall be added to and become a part of the debt secured in this Deed of Trust.

**IT IS MUTUALLY AGREED THAT:**

1. In the event any portion of the property is taken or damaged in an eminent domain proceeding, the entire amount of the award or such portion thereof as may be necessary to fully satisfy the obligation secured hereby, shall be paid to Beneficiary to be applied to said obligation.

2. By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default or failure to so pay.

3. The Trustee shall reconvey all or any part of the property covered by this Deed of Trust to the person entitled thereto, on written request of the Grantor and the Beneficiary, or upon satisfaction of the obligation secured and written request for reconveyance made by the Beneficiary or the person entitled thereto.

4. Upon any default by Grantor hereunder, Beneficiary may, at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the property or any part thereof, in its own name, sue or otherwise collect the rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

5. Upon default by Grantor in payment of any indebtedness secured hereby or in Grantor's performance of any agreement hereunder, time being of the essence with respect to such payment and/or performance, the Beneficiary may declare all sums secured hereby immediately due and payable. In such event, the Beneficiary may elect to proceed to foreclose this trust deed in equity as a mortgage or direct the Trustee to foreclose this trust deed by advertisement and sale, or may direct the Trustee to pursue any other right or remedy, either at law or in equity, which the beneficiary may have. In the event the Beneficiary elects to foreclose by advertisement and sale, the Beneficiary or the Trustee shall execute and cause to be recorded a written notice of default and election to sell the property to satisfy the obligations secured

PAGE 2 - LINE OF CREDIT DEED OF TRUST

hereby whereupon the Trustee shall fix the time and place of sale, give notice thereof as then required by law and proceed to foreclose this trust deed in the manner provided in ORS 86.735 to 86.795.

6. After the Trustee has commenced foreclosure by advertisement and sale, and at any time prior to 5 days before the date the Trustee conducts the sale, the Grantor or any other person so privileged by ORS 86.753 may cure the default or defaults. If the default consists of a failure to pay, when due, sums secured by the trust deed, the default may be cured by paying the entire amount due at the time of the cure other than such portion as would not then be due had no default occurred. Any other default that is capable of being cured may be cured by tendering the performance required under the obligation or trust deed. In any case, in addition to curing the default or defaults, the person effecting the cure shall pay to the Beneficiary all costs and expenses actually incurred in enforcing the obligation of the trust deed, together with Trustee and attorney fees not exceeding the amounts provided by law.

7. Otherwise, the sale shall be held on the date and at the time and place designated in the notice of sale or the time to which the sale may be postponed as provided by law. The Trustee may sell the property either in one parcel or in separate parcels and shall sell the parcel or parcels at auction to the highest bidder for cash, payable at the time of sale. Trustee shall deliver to the purchaser its deed in form as required by law conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, excluding the Trustee, but including the Grantor and beneficiary, may purchase at the sale.

8. When Trustee sells pursuant to the powers provided herein, Trustee shall apply the proceeds of sale to payment of: (1) the expenses of sale, including the compensation of the Trustee and a reasonable charge by Trustee's attorney; (2) to the obligation secured by the trust deed; (3) to all persons having recorded liens subsequent to the interest of the Trustee in the trust deed as their interests may appear in the order of their priority; and (4) the surplus, if any, to the Grantor, or to any successor in interest entitled to such surplus.

9. In the event of the death, incapacity, disability or resignation of Trustee, Beneficiary may appoint in writing a successor Trustee, and upon the recording of such appointment in the mortgage records of the county in which this Deed of Trust is recorded, the successor trustee shall be vested with all powers of the original trustee. The trustee in not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action preceding which Grantor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

10. This Deed of Trust applies to, inures to the benefit of, and is binding not only on the parties hereto, but on their heirs, devisees, legatees, administrators, executors, successors and assigns. The term Beneficiary shall mean the holder and owner of the note secured hereby, whether or not named as Beneficiary herein.

11. This Deed of Trust shall be payable in full in the event of any sale or other transfers of premises by Grantor.

**WARNING: Unless Grantor provides Beneficiary with evidence of insurance coverage as required by the contract or loan agreement between them, Beneficiary may purchase insurance at Grantor's expense to protect Beneficiary's interest. This insurance may, but need not, also protect Grantor's interest. If the collateral becomes damaged, the coverage purchased by Beneficiary may not pay any claim made by or against Grantor. Grantor may later cancel the coverage by providing evidence that Grantor has obtained property coverage elsewhere. Grantor is responsible for the cost of any insurance coverage**

PAGE 3 - LINE OF CREDIT DEED OF TRUST

purchased by Beneficiary, which cost may be added to Grantor's contract or loan balance. If it so added, the interest rate on the underlying contract or loan will apply to it. The effective date of coverage may be the date Grantor's prior coverage lapsed or the date Grantor failed to provide proof of coverage. The coverage Beneficiary purchases may be considerably more expensive than insurance Grantor might otherwise obtain alone and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

The Grantor warrants that the proceeds of the loan represented by the above-described note and this trust deed are for business or commercial purposes only.

This deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns. The term beneficiary shall mean the holder and owner, including pledgee, of the contract secured hereby, whether or not named as a beneficiary herein.

In construing this trust deed, it is understood that the Grantor, Trustee and/or Beneficiary may each be more than one person; that if the context so requires, the singular shall be taken to mean and include the plural, and that generally all grammatical changes shall be made, assumed and implied to make the provisions hereof apply equally to corporations and to individuals.

     IN WITNESS WHEREOF, the Grantor have executed this instrument the day and year first written above.

Michael P. Ivory

STATE OF OREGON     )
                ) ss.
COUNTY OF MULTNOMAH )

     On this day personally appeared before me Michael P. Ivory, to be known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that they signed the same as their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _23rd_ day of April, 2015.

<table>
<tr><td>OFFICIAL SEAL<br>KELLY J HAYS<br>NOTARY PUBLIC-OREGON<br>COMMISSION NO. 469471<br>MY COMMISSION EXPIRES JUNE 30, 2016</td><td></td></tr>
</table>

NOTARY PUBLIC in and for the State of Oregon
Commission Expires: _June 30, 2016_

PAGE 4 - LINE OF CREDIT DEED OF TRUST

# EXHIBIT G

# LIQUIDATION ANALYSIS

## As of April 24, 2015

| Item | Gross Value | Recovery % | Net |
|------|------------:|-----------:|----:|
| Cash | 632 | 100% | 632 |
| Accts. Receivable | 83,203 | 80% | 66,562 |
| Inventory | 484,522 | 20% | 96,904 |
| Machinery | 235,000 | 50% | 117,500 |
| | 803,357 | | 281,598 |
| Less Cost of Sale | | | (10,000) |
| | | | 271,598 |
| | | | |
| Less Balance to Secured Creditor (Bank of the West) | | | (533,190) |
| | | | |
| Equals Deficiency | | | (261,592) |

**Note: This analysis assumes liquidation on a "quick sale" basis. Values as of petition date.**